## 65314. A-LARMS, INC. v. ALARMS DEVICE MANUFACTURING COMPANY.

DEEN, Presiding Judge.

Appellee, Alarms Device Manufacturing Company (Ademco) filed suit on a sales account against appellant, A-larms, Inc. (A-larms), who in turn filed a counterclaim under theories of fraud, breach of warranty, and malicious injury to business. From the trial court's final order granting summary judgment against A-larms on the counterclaim, A-larms appeals. We affirm.

The record indicates that from the date of its incorporation, A-larms, a burglar alarm installation company in Columbus, Georgia, purchased most of its alarm system components from Ademco. In March 1978, after some discussion with a sales representative of Ademco, A-larms began purchasing model 1024 solid state control panels rather than the mechanical relay panels available. For remote arming and disarming of the system, A-larms utilized the number 245 module manufactured by Ademco, along with the 1024 panel. In doing business with Ademco, A-larms selected the above components and others it desired to purchase from Ademco's catalog. That catalog indicated that an "18 months warranty (limited) is in effect on date stamped products. One year on most other products. Write for full warranty information."

During the summer of 1978, customers of A-larms began to complain about the installed alarm systems with the 1024 control panels either arming, disarming, or switching to panic mode during lightning storms. A-larms continued to receive similar complaints at least until early 1980. During that span of time, A-larms on several occasions contacted Ademco representatives, either at its Atlanta warehouse or its New York headquarters, seeking advice on how to remedy the problem.

Initially, Ademco recommended installation of special capacitors in the problematic equipment, and A-larms implemented that suggestion. In the spring of 1979, however, the problem recurred. Ademco later suggested that A-larms run twisted-pair wire to the

remote stations. This measure proved unsuccessful, and Ademco subsequently recommended grounding the equipment with shielded cable. At one point Ademco also supplied A-larms with other 245 modules modified to resist radio frequency interference, but the modifications did not solve the problem with lightning storms. In February 1980, an engineer from Ademco's New York headquarters traveled to Columbus, Georgia, and discussed the problems with A-larms personnel, but no solution obtained. A-larms eventually concluded from trial-and-error experimentation that the problem could be eliminated only by no longer using the 1024 control panel.

During the above period of time, A-larms also complained of two other problems related to equipment purchased from Ademco. One involved intermittent false alarms in systems incorporating a number 379 window switch, a number 11 window vibration contact, and the 1024 panel. The second concerned difficulty in arming or disarming an alarm system which utilized the number 5246 remote key control station.

Neither of the primary officers of A-larms had ever requested from Ademco a copy of the written warranty referred to in the order catalog; rather, both understood through verbal contacts with Ademco representatives that an "overall" warranty attached to the equipment. The officers admitted that Ademco had always been cooperative in repairing or replacing malfunctioning equipment, and that A-larms had not actually complained of any warranty breach (until January 1980) because Ademco had at least worked with A-larms in attempting to solve the problems. Nevertheless, both officers had come to believe and assert that all along Ademco had known that its products were defective and that its recommendations to remedy the problems would be ineffective. Various employees of Ademco insisted that the company had not known of the alleged problems with the equipment until A-larms had so informed it, and that the recommendations made by Ademco personnel had been in good faith.

The record also contains a copy of the written, limited warranty given by Ademco, providing that its obligation was limited to repairing or replacing, at its option, any part of a product which, in its opinion, was proved to be defective in materials or workmanship under normal use and service. The warranty also specified in capital letters that "it does not cover the cost of any inconvenience, transportation damage, misuse, abuse, accident or similar incident. There are no warranties, expressed or implied, of merchantability, fitness or otherwise, which extend beyond the description on the face hereof." Lastly, the warranty stated that "under no circumstances shall Ademco be liable for any loss of, or damage to property, direct,

incidental or consequential, arising out of the use of, or inability to use this product."

Various correspondences in the record document the extent of Ademco's knowledge of and its efforts to remedy the problems related by A-larms. On June 1, 1979, Frank La Comba, a customer relations representative for Ademco, expressed his hope that modifications of the 245 module would withstand the "exceptionally disruptive atmosphere disturbances" in Columbus, Georgia. On October 24, 1979, Henry Costanzo, Ademco's southeastern area manager, prepared a sales report which noted A-larm's complaints regarding the effect of lightning storms on certain alarm systems incorporating the 1024 panel and the 245 module. On January 16, 1980, the officers of A-larms wrote Steve Roth of Ademco, again complaining of the three types of problems with the equipment. A memo of February 12, 1980, by Alan Schwartz of Ademco, and another sales report of February 6, 1980, recount Schwartz's trip to Columbus, Georgia, to investigate the various complaints. Schwartz's memo of February 15, 1980, to Marty Raphael of Ademco sought help in determining a solution to the problem of 244/245 systems being armed or disarmed by static sparks. On March 10, 1980, in a letter addressed to A-larms, Costanzo generally acknowledged A-larms' problems with the equipment, and indicated that he was trying to arrange it so that A-larms would not have to pay its entire account due until the problems were solved.

In a memo on March 28, 1980, marked "company confidential," Schwartz revealed that he had discovered that the 379 foil window take off should not be used with the number 11 vibration contact, because of that combination's tendency towards false alarms; the memo further reflected upon the need to inform customers of the discovery. In a subsequent memo on April 1, 1980, Schwartz intimated to Steve Roth that he was not sure that the installation instructions had adequately explained the correct application of the 379 foil take off and the 11 vibration contact. Other Ademco memos in November and December 1980 reiterated the incompatibility of these two items and the necessity to revise the installation instructions accordingly.

On April 16, 1980, A-larms informed Ademco that because no solution to the problems relative to the 1024 control panel had been found, it refused to make any further payments on its account to Ademco. The deposition testimony shows that around that time, Ademco informed A-larms that no more orders by A-larms would be filled until A-larms paid the outstanding account in excess of $10,000.

A-larms enumerates as error the trial court's granting Ademco's motion for summary judgment against A-larms' counterclaim

alleging fraud, breach of warranty, and malicious injury to business. OCGA § 9-11-56 (c) (Code Ann. § 81A-156) allows summary judgment where there is no genuine issue as to any material fact and the evidence shows that the movant is entitled to judgment as a matter of law. In this case, the evidence must be construed against Ademco, since "the rule is well established that on motion for summary judgment by a party on whom the burden of proof does not lie on the trial of the case, all the evidence must be construed against the movant and in favor of the party opposing the motion . . ." *State Farm Mut. Auto. Ins. Co. v. Tucker,* 130 Ga. App. 187, 188 (202 SE2d 551) (1973); *Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866) (1971). Even so, regarding all three counts of the counterclaim, we believe Ademco demonstrated the lack of any genuine issue of material fact and that it was entitled to judgment as a matter of law.

1. "The five elements of fraud and deceit in Georgia are: (1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff." *City Dodge v. Gardner,* 232 Ga. 766, 769 (fn. 1) (208 SE2d 794) (1974). To prevail against Ademco's motion for summary judgment on the matter of the alleged fraud, A-larms had to establish a genuine issue of fact as to each of the above elements. Review of the voluminous record compels us to conclude that A-larms was unable to do so.

Assuming arguendo that the alarm system components in this case were defective, the evidence reveals that, contrary to A-larms' vehement assertions, Ademco did not knowingly market a defective product, but rather attempted to solve the equipment problems as informed by A-larms. Ademco's efforts may not have been optimum or expedient, but there is no basis to conclude they were fraudulent. This lack of scienter and false representation without more justifies granting the summary judgment. So long as "one essential element under any theory of recovery is lacking . . . the defendant is entitled to summary judgment as a matter of law irrespective of any issues of fact with regard to other essential elements." *Waldrep v. Goodwin,* 230 Ga. 1, 2 (195 SE2d 432) (1973).

2. A-larms' counterclaim regarding an alleged breach of warranty is unusual in that it seeks consequential but not general damages. The facts of this case, however, even assuming again that the products were somehow defective, demand judgment for Ademco on the matter of consequential damages.

OCGA § 11-2-314 (Code Ann. § 109A-2—314) provides that there shall be an implied warranty of merchantability if the seller is a merchant and such warranty is not excluded or modified. OCGA §

11-2-315 (Code Ann. § 109A-2—315) creates an implied warranty of fitness for a particular purpose, unless excluded or modified, where the seller has reason to know of any particular purpose for which the goods are required and the buyer relies upon the seller's selection or furnishing of suitable goods.

"To exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." OCGA § 11-2-316 (2) (Code Ann. § 109A-2—316). Also, consequential damages may be excluded or limited unless such would be unconscionable, and such limitation of damages where the loss is commercial is not prima facie unconscionable. OCGA § 11-2-719 (3) (Code Ann. § 109A-2—719).

It appears that A-larms may have suffered considerable expense in making service calls relative to problematic alarm systems equipment. However, it would be difficult to draft a limited warranty that more succinctly excludes such consequential damages than Ademco's written warranty. Whatever express or implied warranties arose in this case, both are subject to limitation or exclusion, and Ademco legally did so, limiting its obligation to repairing or replacing defective equipment. The limitations and exclusions were certainly conspicuous on the written warranty, and we are unable to find, in this case, any of the exclusions unreasonable or unconscionable.

We note that the officers of A-larms emphasized that they had never requested or seen a copy of Ademco's written warranty. In view of the fact that the order catalog stated that the written, limited warranty was available upon request, A-larms may not avoid the terms of the written warranty by asserting reliance upon its understanding of the extent of the warranty based upon verbal communications by various Ademco personnel. A party may not so benefit from its failure to exercise common prudence and diligence. See *Wilkinson v. Walker,* 143 Ga. App. 838 (240 SE2d 210) (1977). Further, there was no evidence of modification of the written warranty by course of dealing between the parties; during the entire time of dealing with A-larms, Ademco's response to complaints of defective products was to repair or replace.

3. A-larms' assertion that Ademco's refusal to ship any more products to A-larms until the latter paid the outstanding account constituted a malicious injury to business is without merit. Generally, a merchant may sell or refuse to sell to whom he pleases, absent an illegal intent or purpose. *Brown & Allen v. Jacobs' Pharmacy Co.,* 115 Ga. 429 (41 SE 553) (1902).

It was uncontroverted that A-larms received equipment from

Ademco for which it did not tender payment. Contrary to A-larms' argument, the evidence does not show that Ademco promised A-larms that it could withhold payment until the equipment problems had been solved; even construed against Ademco, Costanzo's statement of March 10, 1980 merely expresses an intention to attempt such an arrangement. Where there is such a bona fide dispute over the amount due on a sales account, we find neither malice nor illegal purpose in Ademco's refusing to sell to A-larms until the account was paid. Summary judgment on that matter was proper.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED JANUARY 31, 1983 —
REHEARING DENIED FEBRUARY 9, 1983 — 

*Charles A. Gower, Stephen G. Gunby,* for appellant.
*William B. Hardegree, Jerry A. Buchanan,* for appellee.