67159. LAURIA v. FORD MOTOR COMPANY et al.

DEEN, Presiding Judge.

In November 1978 the appellant, Lauria, purchased a 1972 Ford Pantera sports car from a private party in Jackson, Tennessee. The vehicle needed extensive mechanical and cosmetic repairs, and

Lauria left the car at Robinson-Teague Ford, Inc. (Robinson-Teague) in Jackson to have the necessary repairs done. When Lauria retrieved the car in late March 1979 upon completion of the repairs, William New, the service manager of Robinson-Teague, orally informed him that the mechanical repairs were warranted for 90 days or 4,000 miles.

Soon after his return to Atlanta, Lauria discovered several fluid leaks about the engine. He contacted Robinson-Teague and, following New's instruction, obtained an oral estimate from Strother Ford, Inc. (Strother) of $350 for the repairs. New agreed to pay that amount pursuant to the warranty, and Lauria had Strother proceed with the repairs. Before the work was completed, Strother contacted Lauria to inform him that additional repairs appeared necessary; Lauria instructed Strother to make such additional repairs but to delineate the costs on a separate bill. (Strother did so, and the second bill is not the subject matter of this action.) Upon completion of the work by Strother, Lauria was presented a bill for $556.32 for the work originally estimated at $350. Strother explained that more time and work than originally thought had been necessary to complete the repairs, and, according to Lauria, that Robinson-Teague had indicated that it would cover this increased bill. Lauria paid the bill in full, and subsequently was informed by Robinson-Teague that prior approval of this increased bill had not been requested, that it considered the additional charges excessive, and that it would not reimburse Lauria for the amount in excess of the original estimate until it received a satisfactory explanation from Strother.

Lauria then contacted Al Whitmeyer of the Ford Motor Company's Owner Relations Atlanta District Office (Ford) to request assistance in resolving the dispute between the two Ford dealerships. Lauria testified by deposition that Whitmeyer stated "it sounds like we owe you some money"; that Whitmeyer eventually instructed Robinson-Teague to reimburse Lauria $365.72; and that Whitmeyer assured Lauria that either Ford or Strother would pay him the remaining $190. Lauria further testified that after he had accepted the payment from Robinson-Teague, Whitmeyer informed him that Ford would neither pay the $190 nor require Strother to do so because his office had concluded that Strother's bill was in order, and that Whitmeyer denied having promised Lauria absolutely that he would be reimbursed.

By affidavit, William New indicated that Robinson-Teague had made the $365.72 payment after assurances by Ford Motor Company that the remaining $190 would be paid by either Ford or Strother. He stated that Robinson-Teague had been willing to pay for reasonable, warranted repairs, subject to a proper explanation from Strother or

Ford of the higher charges, but that no explanation had been given.

By affidavit, Thomas Minichiello, the manager of Ford's Owners Relations Atlanta District Office, referred to the sales and service agreement executed by Ford and Strother as proof that Strother was not an agent of Ford. Minichiello stated further that the Owner Relations Office was authorized to investigate and resolve consumer complaints, and that he had to approve all monetary settlements of complaints.

Lauria commenced this action against Ford and Strother, alleging breach of warranty and contract, fraudulent misrepresentation, and a violation of the Uniform Deceptive Trade Practices Act. He sought actual damages of $190 for the alleged overcharge, consequential damages of $5,000 (in part based upon his sense of frustration every time he sees a Ford Motor Company marquis), and punitive damages of $75,000. The trial court granted Ford's motion for summary judgment, and Lauria appeals. *Held:*

1. Lauria contends that the 90 day/4,000 mile warranty which Robinson-Teague extended to Lauria for repairs it completed on Lauria's car was assumed by Ford, because Ford eventually controlled the disposition of Lauria's claim under that warranty. The appellant's argument seems founded upon a combination of theories of agency and contract: Ford, in exercise of its authority over its dealers, directed Robinson-Teague to reimburse the appellant $365.72 after assuring both Robinson-Teague and Lauria that either it or Strother would pay the remainder. The appellant contends that his relinquishment of any further right he could have asserted against Robinson-Teague constituted sufficient consideration to bind Ford contractually to its promise to reimburse the remaining $190.

Where an automobile manufacturer, through its authorized dealer, issues to a purchaser of one of its new automobiles from the dealer a warranty as part of the sale, certainly an implied warranty of merchantability is in effect despite the lack of actual privity. OCGA § 11-2-314 (Code Ann. § 109A-2—314), generally; *Chrysler Corp. v. Wilson Plumbing,* 132 Ga. App. 435 (208 SE2d 321) (1974); *Jones v. Cranman's Sporting Goods,* 142 Ga. App. 838 (237 SE2d 402) (1977). In this case, however, involving repair work performed by a dealer on a used vehicle and purchased from a private party, and no longer under factory warranty, the sales and service agreement between Ford and Strother clearly provides that Strother as a dealer is not the agent of Ford, and there was no real evidence showing a de facto principal/agent relationship between Ford and Strother (or Ford and Robinson-Teague). The fact that Robinson-Teague and Strother were authorized Ford dealers alone thus would not extend to Ford any responsibility under a warranty made by one of the dealers for

repair work done on a used vehicle.

The appellant's argument necessarily assumes that he has indeed relinquished by accord and satisfaction any further claim he might have had against Robinson-Teague pursuant to the warranty. The appellant, however, did not name Robinson-Teague as a party defendant, and there was no determination below concerning the latter's possible liability under the warranty. This court may neither assume nor make the initial determination that an accord and satisfaction occurred. As there was no proof of this essential link to the appellant's warranty argument, the trial court's grant of summary judgment on that count was proper.

2. Lauria also contends that Ford fraudulently misrepresented that it would resolve the dispute between Strother and Robinson-Teague and that it or Strother would pay $190 to Lauria. We conclude that summary judgment as to this allegation likewise was correct.

The five requisite elements to a cause of action in fraud and deceit are: (1) false representation by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; (5) resultant damage. *Reilly v. Mosley,* 165 Ga. App. 479 (301 SE2d 649) (1983); *A-Larms v. Alarms Device Mfg.,* 165 Ga. App. 382 (300 SE2d 311) (1983). For the appellant to prevail against Ford's motion for summary judgment, there must be some evidence to create an issue of fact to each of the above elements.

Division one above also essentially disposes of this count adversely to the appellant. It was undisputed that the appellant had paid Strother the entire service bill, including the alleged excess of $190, before he contacted Ford about the warranty problem. Any showing of justifiable reliance and damage thus depended upon some proof of relinquishment of any claim he might have asserted against Robinson-Teague for the $190. As noted above, the appellant's own legal conclusion regarding the matter is not evidence of such a damage. There being no evidence that any alleged misrepresentations by Ford caused the appellant to relinquish partially his warranty claim against Robinson-Teague, the appellant's cause of action in fraud fails, and the trial court properly granted summary judgment for Ford.

3. Summary judgment for Ford obviously was proper on the count alleging a violation of the Uniform Deceptive Trade Practices Act, OCGA § 10-1-372 (former Code Ann. § 106-702). While that Act expressly does not preclude other actions based on common law or other statutory authority, the sole remedy provided under this Act is injunctive relief. OCGA § 10-1-373 (Code Ann. § 106-703); see *Giant*

*Mart Corp. v. Giant Discount Foods.,* 247 Ga. 775 (279 SE2d 683) (1981); Consumer Protection in Georgia: The Fair Business Practices Act of 1975, 25 Emory L. J. 444, 452 (1976). The appellant brought this action in the state court, which has no equity jurisdiction necessary to grant an injunction, and that court thus correctly granted summary judgment for Ford and dismissed the action.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED DECEMBER 5, 1983.

*Kenneth M. Sissel,* for appellant.
*Alan E. Lubel, Alan P. Shor, Toby B. Prodgers,* for appellees.

*Judgment affirmed. Banke and Carley, JJ., concur.*