72831, 72832. LASWELL v. CHRYSLER CORPORATION;
and vice versa.
(351 SE2d 675)

McMurray, Presiding Judge.

On September 30, 1983, the plaintiff purchased a new Dodge Omni automobile manufactured by defendant Chrysler Corporation. In connection with the purchase of the automobile, plaintiff also purchased an " 'added coverage' Protection Plan" ("the plan"), a service contract between plaintiff and defendant, which supplemented the standard warranty coverage on the automobile for a period of five years or 50,000 miles, whichever came first. Plaintiff paid the automobile dealer $699 for the plan. The dealership paid defendant $89 for the plan and retained $610 profit from the sale of the plan.

The plan contains the following cancellation provision: "This contract may be cancelled by the original purchaser giving written notice to the Chrysler Service Contract Center. During the first 60 days after purchase of the contract, the full amount paid to the selling dealer will be refunded. Thereafter, a refund will be made from the amount received by Chrysler for the contract less a pro-rata adjustment for the elapsed contract months or odometer miles since the original in service date of the vehicle, whichever is greater, and less a $25 administration charge . . ."

On July 9, 1984, plaintiff wrote Chrysler requesting cancellation of the plan. At that time, the mileage on plaintiff's automobile was

26,568. Chrysler tendered a refund of $16.71 which represented a properly calculated refund based upon the $89 payment Chrysler had received from the dealership.

Plaintiff filed this action alleging that she was entitled to receive a refund in an amount calculated from the full amount paid to the dealer for the plan. The complaint also contained class action allegations on behalf of all persons who within the preceding four years had purchased service contracts containing similar provisions to those in plaintiff's contract and who, upon cancelling the contract, had not received a refund based upon the full amount paid for the contract.

The trial court denied plaintiff's motion for class certification and granted summary judgment in favor of plaintiff in the amount of $699. The judgment in favor of plaintiff for the full amount she paid for the plan is based upon defendant having conceded that under the circumstances of the case sub judice plaintiff is entitled to the full amount she paid. This concession is apparently predicated upon an attempt by plaintiff to orally cancel the plan three days after its purchase.

Plaintiff appeals enumerating as error the trial court's construction of the service contract and the denial of her motion for class certification. Defendant cross-appeals enumerating as error the trial court's denial of its motion for transfer of venue. *Held*:

1. The trial court concluded that defendant satisfied the cancellation provisions of the plan as a matter of law by attempting to refund to plaintiff the appropriate refund based on the amount received by the defendant for the contract ($89). Plaintiff contends that the trial court erred in reaching this conclusion and that the language of the cancellation clause of the plan quoted above should be interpreted as indicating that the purchaser would receive a refund based on the amount the purchaser paid for the contract.

The language of the cancellation clause at issue is plain and unambiguous. Where the language of a contract is plain and unambiguous, it must be afforded its literal meaning. *Sentry Engineering &c. v. American Olean Tile Co.*, 172 Ga. App. 769, 770 (1) (324 SE2d 591); *Georgia Farm &c Ins. Co. v. Ray*, 148 Ga. App. 85, 86 (251 SE2d 34); *R. S. Helms, Inc. v. GST Dev. Co.*, 135 Ga. App. 845, 848 (219 SE2d 458). The language at issue clearly states that the refund upon cancellation of the plan will be calculated from the amount "received by [defendant] Chrysler."

We do not find any ambiguity arising from the division of the proceeds of the sale of the contract between defendant and its dealer and reject plaintiff's argument that such a division of the proceeds is either "secret" or foreign to commercial expectations. Our capitalistic economic system is driven by the profit motive and consequently, we expect that the prices set for the retail sale of goods and services will

exceed the cost of those goods and services to the dealer. This enumeration of error is without merit.

2. In view of our holding in Division 1, plaintiff's remaining enumeration of error and defendant's cross-appeal are moot.

*Judgments affirmed. Carley, J., concurs. Pope, J., concurs specially.*

POPE, Judge, concurring specially.

I respectfully disagree with the analysis of the majority opinion. In her first enumeration of error plaintiff contends that the trial court erred in construing the subject "5/50 Protection Plan" in such a manner as to allow defendant to refund "only a secret portion of the purchase price." In pertinent part the disputed provision provides: "CANCELLATION: This contract may be cancelled by the original purchaser giving written notice to the Chrysler Service Contract Center. During the first 60 days after purchase of the contract, the full amount paid to the selling dealer will be refunded. Thereafter, a refund will be made from the amount received by Chrysler for the contract less a pro-rata adjustment for the elapsed contract months or odometer miles since the original in-service date of the vehicle, whichever is greater; and less a $25 administration charge." The trial court found "that Chrysler satisfied the cancellation provisions of the Plan as a matter of law by attempting to refund to Laswell the appropriate pro-rata refund from the 'amount received by Chrysler for the contract,' to wit: $89.00. Nothing in the record suggests that Chrysler or Bob Maddox Dodge [the selling dealer] discussed with Laswell or misled Laswell about the fact that the amount 'received by Chrysler' was less than the amount 'paid to the selling dealer.' Accordingly, Laswell was entitled under the Plan to receive nothing more than the $16.71 offered by Chrysler. Under these circumstances, because the Court finds that Laswell's individual claim cannot be sustained, Plaintiff's Motion [for class certification] must be denied. See *Williams v. Cox Enterprises, Inc.*, 159 Ga. App. 333 [(283 SE2d 367)] (1981). However, under the special circumstances of this case, Chrysler has conceded that Laswell should be refunded the entire $699.00 she paid to Bob Maddox Dodge for the Plan. As the Court will not require the doing of idle acts having the sole effect of cluttering the docket of this Court, the Court enters a summary judgment in favor of Laswell and against Chrysler for $699.00." (Indention omitted.)

The majority opinion affirms the trial court's holding, stating that the language of the cancellation clause at issue is plain and unambiguous. The majority further states that our capitalistic economic system is such that "we expect that the prices set for the retail sale of goods and services will exceed the cost of those goods and services to

the dealer." I am in accord with the majority's implicit finding that a consumer can not abdicate his or her responsibility to read contracts to which the consumer expects to be bound. A careful reading of the contract in this case may have alerted plaintiff to the fact that another transaction would take place. However, whether or not that language would have alerted her to the fact that the other transaction would significantly impact her rights in the event of her election to terminate is a different question. I am not in accord with the majority in its reasoning that from a plain reading of the contract, plaintiff could have been alerted to the true nature of the transaction in which she was about to enter. It is patently unreasonable to place on a consumer the responsibility of anticipating that the dealer would make a profit of approximately six hundred percent (600%) on the other transaction impacting that of the consumer. In this regard, the language is neither plain nor unambiguous; it is arguably deceptive and unfair (see Uniform Deceptive Trade Practices Act, OCGA § 10-1-371 et seq.; Fair Business Practices Act of 1975, OCGA § 10-1-390 et seq.), although plaintiff asserts no claim for relief under these consumer protection statutes.[1]

To borrow from *Henningsen v. Bloomfield Motors, Inc.,* 32 N. J. 358 (161 A2d 69) (1960), dealing with warranty responsibilities of the manufacturer/dealer of an automobile, in a society such as ours where the automobile is a common and necessary adjunct of daily life, the manufacturer/dealer is under a special obligation in connection with the construction, promotion and sale of their automobiles. Consequently, the courts must examine warranty agreements closely to see if consumer and public interests are treated fairly. "The traditional contract is the result of free bargaining of parties who are brought together by the play of the market, and who meet each other on a footing of approximate economic equality. . . . In such a society there is no danger that freedom of contract will be a threat to the social order as a whole. But in present-day commercial life, the standardized mass contract has appeared. It is used primarily by enterprises with strong bargaining power and position. 'The weaker party, in need of the goods or services, is frequently not in a position to shop around for better terms, either because the author of the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses. His contractual intention is but a subjection more or less voluntary to terms dictated by the stronger party, terms whose consequences are often understood in a vague way, if at

---

[1] The unconscionability provisions of the Uniform Commercial Code (OCGA § 11-2-302) also afford no basis for relief, the contract here being one for the furnishing of services and labor rather than one for the sale of goods. See *Dixie Lime &c. Co. v. Wiggins Scale Co.,* 144 Ga. App. 145 (2) (240 SE2d 323) (1977).

all.' [Cits.] Such standardized contracts have been described as those in which one predominant party will dictate its law to an undetermined multiple rather than to an individual. They are said to resemble a law rather than a meeting of the minds." 161 A2d at 86.

In this context, the rote application of traditional principles of contract law, developed in a much more simplistic commercial setting, no longer results in a just and equitable adjudication of rights between the parties. This is not to hold that long-standing principles of contract law are currently outdated. I hold simply that a contract or clause thereof must be considered in light of the total commercial setting in which it arose.

For this reason, placing on the plaintiff consumer the responsibility of anticipating the full complexity of the transaction between herself and defendant Chrysler, a large corporation in a position of great bargaining power, is an onerous and unfair burden. It is, essentially, to require the consumer to carry with him his own legal counsel, who possesses sufficient legal and business acumen to anticipate the wiles of the large corporation, fully equipped with a well-chosen arsenal of corporate attorneys, ever-ready to draft deftly biased contractual provisions which camouflage questionable business practices.

It is in view of the true nature of the commercial setting in which this transaction took place that I do not concur with the majority opinion. Even had plaintiff read the language, it is unreasonable to place on her the responsibility of anticipating the true nature of the transaction. Her basic position of unequal bargaining power would have remained unaltered. Whether or not the contractual language is found to be "ambiguous," the language cleverly disguises business dealings, the result of which this court should not condone. In simply stating that the language is unambiguous without full consideration of the actual commercial setting in which the transaction took place, the majority, in effect, gives legal credence to business practices which ultimately do not foster free and fair business enterprise and dealing.

Notwithstanding the foregoing, I am compelled to agree with the majority's ultimate conclusion affirming the judgment of the trial court. "It is well established that the discretion of the trial [court] in certifying or refusing to certify a class action is to be respected in all cases where not abused." *Hill v. Gen. Fin. Corp.*, 144 Ga. App. 434, 436 (241 SE2d 282) (1977). In addition to the disputed findings set forth above, the trial court based its decision denying class certification on several other grounds, including a finding that plaintiff's claim was not "typical" of the purported class claims. There being some evidence of record to authorize and support this exercise of the trial court's discretion, the judgment entered thereon must be affirmed. See *Cohutta Mills v. Bunch*, 166 Ga. App. 395 (2) (304 SE2d 431) (1983). Compare *Kleiner v. First Nat. Bank*, 97 FRD 683, 695-96

(N.D. Ga. 1983).
DECIDED NOVEMBER 21, 1986 —
REHEARING DENIED DECEMBER 9, 1986 — 

*David E. Hudson*, for appellant.
*Michael A. Doyle, Peter Q. Bassett, William H. Hughes, Jr., A. Rowland Dye*, for appellee.