A95A1429. NELSON et al. v. C. M. CITY, INC. et al.
(463 SE2d 902)

BIRDSONG, Presiding Judge.

A fire caused extensive damage to the home of Arthur and Kathy Nelson. They contend the fire was caused by a defect in the Curtis Mathes television which they had bought 15 months before, and they filed suit against C. M. City, Inc. d/b/a Curtis Mathes Home Entertainment Center; Curtis Mathes Corporation; and NEC Technologies, Inc.

The trial court assumed for the purpose of summary judgment that the fire was caused by the television and granted summary judgment to the defendants, as follows: "[When the general public] sees a product label on a piece of merchandise they think the *manufacturer* has with pride placed the label on its product. This isn't so in Georgia any more because the General Assembly has created what it calls a 'product seller' which has taken the place of what previously was known as a 'manufacturer.' . . . At first blush one would conclude that CM [Curtis Mathes] manufactured the TV; however, it seeks exemption from this products liability claim as a 'products seller.' [See OCGA §§ 51-1-11 (b) (1) and 51-1-11.1 (a) and (b).] . . . CM did not provide any design information to the other entities for the TV. It did not have an 'active role in the production, design or assembly' of the television set, its chassis or any of its component parts. It did not inspect the product during or after its assembly. It was not aware of any problems or defects in it. Harvey Industries, Inc. (Harvey) received the imported chassis and component parts from importer NEC Technologies, Inc. (NEC). CM paid Harvey to put a cabinet on the chassis which had been assembled by NEC Home Electronics (USA), Ltd. ['NEC Ltd.'] Harvey shipped the finished product directly to C. M. City, in a closed cardboard carton. C. M. City sold the TV to the plaintiffs. . . . Therefore, CM was a product seller of the TV under Georgia law [and] was not a manufacturer of the TV for purposes of strict liability as contemplated by OCGA § 51-1-11. . . . [CM] was not a manufacturer which functioned also as a product seller [OCGA § 51-1-11.1 (a)] because *it played no active role in the production, design or assembly of the TV. . . . Alltrade, Inc. v. McDonald*, 213 Ga. App. 758 [(445 SE2d 856)]."

The trial court also found plaintiffs had shown no negligence of Curtis Mathes or C. M. City and that Curtis Mathes and C. M. City are not liable beyond the express provisions of this six-year warranty given to the plaintiffs, which limited any warranty to damages to the television set itself: "This warranty excludes all incidental and consequential damages." Citing *Apex Supply Co. v. Benbow Indus.*, 189 Ga. App. 598, 600 (1) (376 SE2d 694) and other cases, the trial court found this warranty exclusion was not unconscionable per se and not

unconscionable in fact. The trial court also found Curtis Mathes and C. M. City were not liable for negligence of Harvey or NEC as they were independent contractors.

The trial court found that NEC "may not be considered the ostensible manufacturer of the TV chassis . . . simply because of its exclusive importation, marketing and distribution of the product. It is not the alter ego of NEC Home Electronics (USA), Ltd. which manufactured the component chassis. NEC did not design, assemble or manufacture the chassis or any component part of it. . . . NEC as a distributor or a product seller is not liable to the plaintiffs as a matter of law [and is not a party to the warranty between Curtis Mathes and plaintiffs]."

This ruling left only Curtis Mathes and C. M. City in the suit to the extent of the warranty on the television itself. The Nelsons enumerate seven errors. *Held*:

1. Appellants Nelson contend, and there is evidence, that Curtis Mathes had an active role in the assembling and manufacture of the television because it designed the television: that is, it conceived the idea to have a 46-inch screen projection television built and to have it then assembled in a cabinet, and it made those specifications to others and formulated a plan to have it assembled according to its certain specifications. Further, although Harvey physically assembled the television, the Nelsons contend it did so only at Curtis Mathes's direction and according to Curtis Mathes's intention, design, specifications, and formulation.

It is true, as stated regretfully by the trial judge, that Georgia law — specifically *Alltrade,* supra — seems to say that one who merely labels a product and sells it under his name does not stand by that name, even though the public may be led to purchase that product only because of the quality implied and represented by the name so used; and that an entity is not, merely because it labeled a product as its own and sells it, strictly liable for damages caused by that product. But the trial judge, bowing so respectfully to *Alltrade,* leaned too far.

What we actually said in *Alltrade* is "one who *merely* labels a product as its own prior to its sale *but has no input* into its making, *either by design or manufacture or assembly, is a product seller and not a manufacturer.*" (Emphasis supplied.) Id. at 759-760. There is a big difference between the "input" and "role" which Alltrade had in merely having its name stamped on ladders and which Home Depot had in selling them, and the role Curtis Mathes and C. M. City had in conceiving, specifying, ordering, labelling and warranting this television as having been made by Curtis Mathes. Alltrade's name was stamped on the ladder as the "ostensible manufacturer" (id. at 758), but "Alltrade *did not provide any design information.* . . . Nor did it make or assemble the ladders or any of the component parts. . . .

Alltrade received the ladders from [the importer] in closed cardboard cartons and in turn sold the ladders in the unopened cartons to [the retailer]. . . . Alltrade *did not affix any warnings, warranties or instructions* to any of the ladders or the cartons in which the ladders were received, *nor did it participate in the preparation or drafting of any such instructions, warranties or warnings* which were or might have been affixed to the ladders or cartons which were received and subsequently shipped by Alltrade." (Emphasis supplied.) Id. The ladder sold by Home Depot in *Alltrade* could have been sold by any retailer and could have been stamped with the name of any "ostensible manufacturer" and was not purchased because of a strong public perception of quality evidenced by the name of "Alltrade" stamped on the ladder.

2. OCGA § 51-1-11.1 provides that a "product seller" is one who "leases or sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles *pursuant to a manufacturer's plan, intention, design, specifications; or formulation.*" (Emphasis supplied.) In other words, one is not a manufacturer if it merely sells (or assembles) a product made according to "[*another*] manufacturer's plan, intention, design, specifications, or formulation." Id. In this case, the television was manufactured, prepared, assembled, and packaged according to *Curtis Mathes's* own "plan, intention, design, specifications, [and] formulation." Id. Curtis Mathes was not a *"mere"* product seller (see *Ream Tool Co. v. Newton*, 209 Ga. App. 226, 227 (3) (a) (433 SE2d 67)) merely because the product it sold through its agent, C. M. City, was assembled by others according to Curtis Mathes's plan, intention, design, specifications, and formulation.

One who *merely* sells a product is a "product seller" (id.) but one who sells a product and has "input" or is *actively* involved in the conception, design, or specification of the product is a manufacturer. OCGA § 51-1-11.1 (a). Curtis Mathes "[had] input into [the] making, either by design or manufacture or assembly" of this television. *Alltrade*, supra at 759-760. Moreover, Curtis Mathes did not merely stamp its name on this television. It had this television made and assembled pursuant to its own plans, intentions, and specifications and *not* "pursuant to [another] manufacturer's plan, intention, design, specifications, or formulation." OCGA § 51-1-11.1 (a). These statutes are strictly construed to encourage commerce, but the General Assembly did not intend to ignore the commercial reality that products of certain names are advertised for quality and are purchased for that reason, nor did it intend to make every "quality" trade name worthless to the public while retaining its vast benefit to the trade name owner. The legislature did not intend to immunize a "seller" who conceives and formulates a certain product, represents to the public that this product is of high quality because it manufactured it, puts its

name on the product, and as evidence and confirmation thereof, *affixes to it warranties, warnings, or instructions.* Cf. *Alltrade* at 758.

Chief Judge Pope, in his special concurrence to *Alltrade* said that an erroneous reading of OCGA § 51-1-11.1 is unfair, "where a company has put its own trade name on a product, thus leading the public to believe it manufactured the product even though it did not. Other states which statutorily immunize or limit the liability of nonmanufacturers . . . nonetheless provide in their statutes that nonmanufacturers have the liability of manufacturers if they market the product under their label, trade name or brand name. See Ohio Rev. Code Ann., § 2307.78 (B) (7) (Anderson 1991); Wash. Rev. Code Ann., § 7.72.040 (2) (e) (1992)." Id. at 761. Chief Judge Pope recommended that our legislature "fine tune" our law to eradicate such unfairness. The fair result advocated by Chief Judge Pope is reached in this case, however, by focusing more precisely on the exact language of OCGA § 51-1-11.1, so that it is " 'strictly construed or limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms.' " *Daniel v. American Optical Corp.*, 251 Ga. 166, 168 (1) (304 SE2d 383), quoted in *Alltrade*. As noted above, a product seller is one who sells, installs, etc. or assembles "pursuant to *a manufacturer's* plan, intention, design, specifications, or formulation" (emphasis supplied) (OCGA § 51-1-11.1); that is, pursuant to *some other's* plan, intention, design, specifications, or formulation. Curtis Mathes sold a product made and assembled pursuant to *its own* "plan, intention, design, specifications, or formulation."

It may not be insignificant in the jury's inquiry to consider whether Curtis Mathes must comply with federal or state regulatory standards or must report such compliance for that product, or did report such compliance or affixed a label indicating such compliance. These may be deemed by the jury to be "active roles" in the manufacture of the product.

The trial court erred in granting partial summary judgment to Curtis Mathes and C. M. City on the issue of strict liability. C. M. City may be liable as the exclusive special agent of Curtis Mathes for sale of this television, unlike the mass retailer Home Depot, Inc. in *Alltrade.*

3. Even if C. M. City did not offer an express warranty on the purchase of this television, it may be liable for breach of an implied warranty of fitness. See OCGA § 11-2-315; *Fiat Auto USA v. Hollums*, 185 Ga. App. 113, 114 (1) (363 SE2d 312).

4. The trial court erred in concluding as a matter of law that Curtis Mathes's warranty which excluded consequential damages was not unconscionable in fact. The test of unconscionability is whether in the light of the commercial background and needs of the trade or case, the warranty clauses are so one-sided as to be unconscionable under

the circumstances extant at the making of the contract. *Zepp v. Mayor &c. of Athens*, 180 Ga. App. 72 (348 SE2d 673). The evidence judged in favor of the plaintiffs as respondents in summary judgment (*Smith v. Ga. Kaolin Co.*, 264 Ga. 755, 756-757 (449 SE2d 85)) fairly and by reasonable inference shows the Nelsons bought this television because of Curtis Mathes's name and reputation for manufacturing quality, non-defective products "backed" by Curtis Mathes. The warranty exclusion in this case was imposed by Curtis Mathes as the only condition by which appellants could acquire the reputedly high-quality Curtis Mathes product, and it resembled a law more than a meeting of the minds. See *Laswell v. Chrysler Corp.*, 181 Ga. App. 219, 223 (351 SE2d 675) (special concurrence). It may have been deemed by the buyers that *because Curtis Mathes manufactured the television*, a provision for consequential damages such as fire damage to their home was superfluous. Thus, in the jury's view it may be unconscionable for Curtis Mathes to take advantage of its name to conceive, to have assembled, and to sell through its agent C. M. City a product as a high-quality product while failing to disclose that it did not actually manufacture that product, and then, by using a one-sided warranty, immunize itself from liability for damages arising out of such defective product sold in that manner.

In *Sharpe v. General Motors Corp.*, 198 Ga. App. 313, 315 (5) (401 SE2d 328) and in *Fiat Auto USA*, supra at (2), we held the warranty exclusions to be not unconscionable; no reason was given for that conclusion in either case, but we implicitly found the clause to be "not unreasonable" in the facts of those cases. See *A-larms, Inc. v. Alarms Device Mfg. Co.*, 165 Ga. App. 382, 385 (2) (300 SE2d 311). We have specifically found in the facts of the case, however, that the exclusion of consequential damages is unreasonable, given the manufacturer's (Curtis Mathes's) use of its name and reputation as the manufacturer of superior quality products, while failing to disclose that it did not actually manufacture the product and yet seeking to shield itself from liability for damages consequential to a defective product; by drafting a one-sided warranty rendering the actual value of the name worthless to the buyers; and by rendering the "quality" they purchased non-existent and even dangerous. To uphold this exclusion as "not unconscionable" would ultimately make the Curtis Mathes name worthless; it is not reasonable to suppose that even Curtis Mathes intended this effect. It is reasonable to presume that Curtis Mathes intends to stand behind the products which it purports to manufacture, and it is reasonable to presume these buyers were induced to buy this high-quality product upon the belief that Curtis Mathes stood behind it. To say otherwise by ruling this exclusion to be reasonable and not unconscionable would do damage to both parties.

5. Curtis Mathes may be liable for negligence even though the chassis was built by another, if such negligence is a violation of Curtis Mathes's express warranty that the television would be free of defects for six years. OCGA § 51-2-5 (3).

6. It is a question of fact whether NEC is an alter ego of NEC Ltd. According to appellants Nelson, NEC Ltd. performed its business in the United States through NEC, and there is evidence that the two entities are so intertwined that Curtis Mathes's agent could not distinguish them. The evidence is to be construed most favorably to the party opposing summary judgment (*Smith v. Ga. Kaolin Co.*, supra), and the benefit of all reasonable inferences and doubts is awarded to them. In that light, the summary judgments of the trial court are incorrect.

*Judgment reversed. Johnson and Smith, JJ., concur.*

DECIDED OCTOBER 11, 1995 —
RECONSIDERATIONS DENIED OCTOBER 27, 1995 — ▇▇▇▇▇▇

*Newton, Smith, Durden, Kaufold & Rice, Howard C. Kaufold, Jr.*, for appellants.

*Howard & Racz, Wayne S. Racz, Dillard, Bower & East, Bryant H. Bower, Jr., Hunter, MacLean, Exley & Dunn, Glen M. Darbyshire, Jones & Smith, Julian B. Smith, Jr., Robert B. Sullivan*, for appellees.