94 F.3d 647
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
MODERN DROP FORGE COMPANY, Plaintiff-Appellant,
v.
RAPID TECHNOLOGIES, INCORPORATED, Defendant-Appellee.
 No. 95-3113.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 21, 1996.
Decided Aug. 8, 1996.
 
 Before BAUER, KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 In this diversity case, Modern Drop Forge Company ("Modern") seeks to recover consequential damages for the alleged breach by Rapid Technologies, Inc. ("Rapid") of a contract for the design and installation of a furnace at Modern's Blue Island, Illinois facility. The district court dismissed the case after concluding that Modern's claim was foreclosed by a provision of the contract that precludes the recovery of incidental and consequential damages in the event of a breach. The district court subsequently denied Modern's motion to vacate and reconsider that dismissal. In this appeal, Modern advances an array of arguments in an attempt to show that the dismissal was erroneous. Most of those arguments were waived below, however, when Modern failed to present them in response to Rapid's motion to dismiss. As for the lone argument that Modern preserved, we agree with the district court that the contract's damage limitation provision is not unconscionable. We therefore affirm the district court's judgment of dismissal.
 
 I.
 
 2
 In order to demonstrate that most of Modern's present arguments were not preserved below, we lay out the complaint's allegations and Modern's arguments in response to the motion to dismiss in some detail. Although the complaint's allegations are somewhat sketchy, Modern attached various exhibits that fill in the details. Those exhibits are properly considered as part of the complaint in determining whether it states a viable claim for relief. See Fed.R.Civ.P. 10(c); Hamilton v. O'Leary, 976 F.2d 341, 343 (7th Cir.1992). We also at this stage assume the truth of the matters alleged in Modern's complaint. MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir.1995).
 
 
 3
 The complaint alleges a claim for breach of contract without identifying the contract allegedly breached. Modern alleges that Rapid sent it a quotation for the design and installation of a "Whole Bar Rapid Heating Furnace and Automatic Loading System" (the "furnace") on approximately September 1, 1992. Included with that quotation were Rapid's standard terms and conditions of sale. Between September 1 and October 6, 1992, Rapid and Modern engaged in further negotiations, adding what Modern calls "an additional term concerning a review phase via letter from Rapid to Modern dated September 10, 1992." (R. 7 at p 6.) On or about October 6, Modern issued a purchase order for the furnace that included its own standard terms and conditions of sale. Modern also made certain modifications to the standard terms and conditions that had accompanied Rapid's quotation. Upon receiving Modern's purchase order, Rapid set about to design and then to install the furnace. Pursuant to the above documents and subsequent purchase orders covering component parts for the furnace, Modern agreed to pay and did pay Rapid $438,214.16.
 
 
 4
 To prepare for the installation of its new furnace, Modern purchased certain additional equipment and made modifications to its physical plant, all at the direction of Rapid. The furnace that Rapid eventually installed in late May and early June 1994, however, did not perform in accordance with the specifications to which the parties had agreed. On October 27, 1994, Rapid acknowledged that it was incapable of producing a furnace that would perform in accordance with those specifications. It therefore returned to Modern $415,046.66, which reflected the amounts Modern paid for the furnace and all component parts save one. Modern subsequently purchased a furnace for its Blue Island plant from another company.
 
 
 5
 Modern's complaint further alleges that at all material times, Rapid knew that it did not have the technological capability to design and manufacture a furnace that would meet the specifications in the parties' agreement. Rapid withheld this information from Modern, however, and induced it to purchase necessary equipment and to modify its plant to accommodate the furnace.
 
 
 6
 Rapid's breach of the parties' contract allegedly caused Modern to suffer the following damages, for which it seeks to recover in this action: cover damages of at least $100,000, freight charges and construction costs of $26,724, equipment costs of $151,394.85, and labor costs, utility expenses, interest expense and lost profits. Modern's complaint alleges that all tolled, its damages exceed $1,000,000.
 
 
 7
 Rapid promptly moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Rapid's brief in support of that motion pointed out that Modern's complaint fails to identify the terms of the parties' agreement. Relying on the documents attached by Modern as exhibits to the complaint, then, Rapid set out to do exactly that. Rapid principally argued that Modern could not recover the incidental and consequential damages sought in its complaint because the terms of Rapid's quotation limit the buyer's remedy for a breach to a return of the purchase price. The warranty provision in Rapid's quotation, for example, provides that:
 
 
 8
 If any defects in material and workmanship of the product develop within the applicable warranty period, Seller shall supply replacement/repair parts F.O.B. Blue Island, freight prepaid. This shall be Buyer's exclusive remedy for Seller's liability hereunder.
 
 
 9
 (R. 7, Ex. A at p 6.) That quotation also incorporates Rapid's standard terms and conditions of sale, which include the following additional warranty provision:
 
 
 10
 This warranty does not extend to Buyer's manufacturing process or the quality of Buyer's product. Losses or damage resulting from equipment failure, program errors, or from the time consumed in delivering, installing, or testing the equipment are not covered by this warranty.
 
 
 11
 In no event shall the Seller be liable for any amount in excess of the sales price of the equipment delivered by the Seller. Further, IN NO EVENT SHALL SELLER BE LIABLE FOR ANY SPECIAL INDIRECT, OR CONSEQUENTIAL DAMAGES OR LOSS OF PROFITS FOR CAUSES COVERED UNDER THIS WARRANTY OR OTHERWISE UNDER THIS CONTRACT.
 
 
 12
 (Id. at p 11.) Rapid argued that Modern accepted these terms when it sent the October 6, 1992 purchase order. Conceding that Modern made certain modifications to the quotation as alleged in Modern's complaint, Rapid maintained that Modern did not allege that the above warranty and damage limitation provisions had been revised in any way. Rapid argued, moreover, that Modern's purchase order did not contain any provision in conflict with these warranty and damage limitation provisions. According to Rapid, then, dismissal was warranted because the parties' contract foreclosed recovery of the indirect and consequential damages sought in the complaint.
 
 
 13
 Modern's rather curious response to Rapid's motion failed to explain why the above warranty and damage limitation provisions from the quotation were not part of the parties' contract. Modern's response seemed to agree, in fact, with Rapid's characterization that the quotation constituted an offer and the purchase order an acceptance. (See R. 13 at 1-2.) Without pointing to any contrary warranty or damage provision in its purchase order, Modern merely referred to its complaint as posing a "classic battle of forms." In such a case, it suggested, the nature of the parties' agreement depends on their intent, and "[m]atters of intent are questions of fact." (Id. at 1.) Modern's only mention of the damage limitation provision was to suggest that such provisions are not enforced under the Uniform Commercial Code if they are unconscionable. Modern argued in that regard that if its allegations as to Rapid's lack of technological know-how are credited, the damage limitation provision would be unconscionable.
 
 
 14
 The district court granted Rapid's motion. Noting that Modern had failed to explain why the limitation of damages provision in Rapid's standard terms and conditions of sale would not be part of the parties' agreement, the court found that it was, and also found that this provision precluded Modern from recovering the damages alleged in its complaint. The court concluded, moreover, that Modern had not alleged any facts to indicate that the damage limitation provision was unconscionable.
 
 
 15
 The district court's decision prompted Modern to file a "Motion to Vacate, for Reconsideration and for Leave to File an Amended Complaint," in which it attempted to explain for the first time why the damage limitation provision was not a part of the parties' agreement. Modern essentially argued that the standard terms and conditions incorporated into Rapid's quotation conflicted with the terms and conditions in its own purchase order, meaning that neither of the provisions applied and the missing terms would be supplied by the UCC. It also made passing reference to the fact that its purchase order was conditioned on acceptance of the terms and conditions that accompanied it. The district court rejected those arguments on the merits and because Modern had raised them for the first time in its motion to reconsider.
 
 II.
 
 16
 Modern now advances a plethora of reasons as to why the damage limitation provision does not apply. First, and most fundamentally, Modern contends that its complaint alleged facts to suggest that Rapid's quotation was insufficient to constitute a valid offer. It argues instead that its own purchase order constituted the offer and that Rapid accepted that offer by commencing performance. Alternatively, Modern suggests that even if the quotation was an adequate offer, its own purchase order proposed different terms relating to remedies and recoverable damages. That purchase order, according to Modern, was expressly conditioned on Rapid's assent to the different terms. Modern also alternatively argues that because the remedy provisions of Rapid's quotation and its own purchase order are materially different, those terms cancel one another out, and the remedies available for a breach must be determined in accordance with the UCC's "gap filler" provisions. Finally, Modern argues that even if the remedy provisions relied on by Rapid became part of the parties' agreement, they are unenforceable--either because the provisions never became operative or because the limited remedy provided in the quotation "failed of its essential purpose."
 
 
 17
 We agree with Rapid, however, that Modern waived these arguments by failing to raise them in response to the motion to dismiss below. We need cite no authority for the axiomatic proposition that arguments not advanced before the district court are out of bounds once the case is on appeal. None of the many theories now offered to explain why the remedies provisions of Rapid's quotation are not a part of the parties' agreement was argued by Modern in response to Rapid's motion to dismiss. Like Modern's complaint, that response failed even to identify the contract allegedly breached and instead vaguely asserted that Rapid's motion must be denied because there are factual issues relating to the parties' intent.[1] That cursory response is insufficient to preserve the above arguments when the defendant has pointed to a specific term of the contract that would doom the plaintiff's claim and has offered a theory consistent with the complaint as to why that term is part of the contract. In response to such an argument, Modern was required to articulate a theory under which it could recover incidental and consequential damages--in other words, to explain why the provisions of Rapid's quotation that limit Modern's remedies in the event of a breach either are not part of the parties' agreement or are unenforceable. See National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 360-61 (7th Cir.1987); see also Ohio Casualty Ins. Co. v. Bazzi Constr. Co., 815 F.2d 1146, 1149 (7th Cir.1987). A response that vaguely references a "classic battle of forms" and factual issues relating to the parties' intent is insufficient, as neither argument addresses the limitation of damages provision relied on by Rapid. Cf. Douglas v. American Info. Technologies Corp., 877 F.2d 565, 574 (7th Cir.1989) (Plaintiff had the obligation "to set forth the basis of her assertion with sufficient specificity to permit the district court to understand her position").
 
 
 18
 Although Modern's purchase order with its allegedly conflicting terms was before the district court as an exhibit to the complaint, the court was not required to conduct its own investigation of that exhibit in order to fashion arguments that might support Modern's claim. See Libertyville Datsun Sales, Inc. v. Nissan Motor Corp., 776 F.2d 735, 737 (7th Cir.1985) ("the district court need not investigate the evidence for arguments that might possibly support Libertyville's claim: it was the plaintiff's responsibility to raise the arguments that it seeks to use now on appeal." (emphasis in original)). We have remarked before, in fact, that trial judges " 'may properly depend upon counsel to apprise [them] of the issues for decision. [They are] not obligated to conduct a search for other issues that may lurk in the pleadings.' " National Fidelity, 811 F.2d at 360 (quoting Desert Palace, Inc. v. Salisbury, 401 F.2d 320, 324 (7th Cir.1968)); see also Libertyville Datsun, 776 F.2d at 737. Once Modern failed to apprise the district court of any theory under which the damage limitation provisions of Rapid's quotation would be eliminated from the parties' final agreement, the district court was entitled to rely on those provisions in dismissing Modern's complaint. Modern cannot now resurrect that complaint by advancing theories on appeal that were never presented to the district court.[2]
 
 
 19
 Two of Modern's present theories were, however, presented to the district court in abbreviated fashion in Modern's motion to vacate and to reconsider. Modern argued there that it did not simply accept the terms of Rapid's quotation but that its purchase order "was expressly premised on the terms and conditions printed on the reverse side." (R. 32 at 3.) Because "contradictory provisions to the contract exist, none of the provisions apply and the UCC controls." (Id.) Our cases, however, plainly prohibit a party from advancing new theories based on previously available evidence for the first time in a motion filed after the entry of judgment under Fed.R.Civ.P. 59(e). See, e.g., Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 404 (7th Cir.1986); Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir.1985). As we explained in Havoco of Am., Ltd. v. Sumitomo Corp. of Am., 971 F.2d 1332, 1336 (7th Cir.1992), "such motions cannot be used to raise new arguments which could and should have been raised before judgment was entered." Modern's Rule 59(e) motion did not rely on any facts that were not available to it at the time of its response to Rapid's motion to dismiss. The legal arguments advanced there could and should have been raised in response to Rapid's motion to dismiss; they were not preserved for this appeal when raised only in a Rule 59(e) motion to reconsider. See Caisse Nationale de Credit Agricole v. CBI Indus., Inc., Nos. 95-2708 & 95-2814, slip op. at 8 (7th Cir. July 24, 1996) ("Reconsideration is not an appropriate forum for ... arguing matters that could have been heard during the pendency of the previous motion.").
 
 III.
 
 20
 The only argument Modern preserved below is that enforcement of the damage limitation provision in these circumstances would be unconscionable. Section 2-719(3) of the UCC, as adopted by the State of Georgia,[3] provides as follows:
 
 
 21
 Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.
 
 
 22
 OCGA § 11-2-719(3). In a commercial setting such as this, Georgia's courts have narrowly construed the UCC's unconscionability exception to the general rule that commercial parties are bound by the terms of a contract to which they have agreed. So long as a limitation or exclusion of consequential damages was conspicuously placed on a written warranty, the Georgia courts have refused to find such a provision unconscionable. See Fiat Auto U.S.A., Inc. v. Hollums, 363 S.E.2d 312, 314 (Ga.App.Ct.1987); A-larms, Inc. v. Alarms Device Mfg. Co., 300 S.E.2d 311 (Ga.App.Ct.1983); see also Hall v. Fruehauf Corp., 346 S.E.2d 582, 583 (Ga.App.Ct.1986) ("A limitation of remedies in a commercial setting is not considered unconscionable."). Here, the limitation on the recovery of consequential damages was the only provision of Rapid's standard terms and conditions of sale that was placed in all capital letters. It therefore was the most prominent of those terms. That provision also did not deprive Modern of any and all remedies under the contract because Modern was able to and did recover the purchase price of the furnace. Cf. Freemen v. Hubco Leasing, Inc., 324 S.E.2d 462, 470 (Ga.1985) (consumer contract that bars all remedies and all damages found to be unconscionable). We are confident, then, that a Georgia court would not find the damage limitation provision affixed to Rapid's quotation unconscionable.[4]
 
 IV.
 
 23
 Modern finally contends that the district court abused its discretion in denying, sub silentio, the request included in its Rule 59(e) motion for leave to file a second amended complaint.[5] Yet Modern did not attach an amended complaint for the district court's review, and the passing references in Modern's motion explained only that the amendment would add "theories of fraudulent misrepresentation." Although leave to file an amended complaint should be "freely given when justice so requires" (Fed.R.Civ.P. 15(a)), Modern's request here came only after judgment was entered. We have said that "the presumption that leave to amend shall be freely given pursuant to Rule 15(a) disappears after judgment has been entered." Harris v. City of Auburn, 27 F.3d 1284, 1287 (7th Cir.1994); see also First Nat'l Bank v. Continental Illinois Nat'l Bank and Trust Co., 933 F.2d 466, 468 (7th Cir.1991). We have indicated, moreover, that when a request to amend is made after judgment, the proposed amended complaint should be tendered along with the Rule 59(e) motion to enable the district court to consider the merits of that request. See, e.g., Harris, 27 F.3d at 1287. Modern failed to tender its proposed second amended complaint with its motion and only vaguely described the nature of its new allegations as "theories of fraudulent misrepresentation." It offered no explanation for failing to raise those theories earlier. In light of these facts, and the fact that Modern's Rule 59(e) motion itself relied on theories of recovery that were never raised in its cursory response to the motion to dismiss, the district court did not abuse its discretion in finally ending this case by denying Modern leave to file a second amended complaint.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Modern's unwillingness to identify the contract on which its claim is based was evident even at oral argument before this court, where its counsel suggested that the parties' contract may be an oral one. That was the first and only mention of an oral contract that we have found in this record
 
 
 [2]
 Modern's reliance here on cases such as Hrubec v. National R.R. Passenger Corp., 981 F.2d 962, 963-64 (7th Cir.1992), and Dawson v. General Motors Corp., 977 F.2d 369, 372-73 (7th Cir.1992), to excuse its waiver is not persuasive. Those cases do not permit a plaintiff to essentially stand silent before the district court and to respond only on appeal once the defendant has moved to dismiss and raised an issue that may doom its complaint
 
 
 [3]
 Pursuant to paragraph 17 of the standard terms and conditions of sale incorporated into Rapid's quotation, the parties' agreement is governed by Georgia law. Although Modern has argued for the first time on appeal that Rapid's quotation did not constitute a valid offer, it still agrees that Georgia law is governing here. (See Modern Br. at 23 & n. 2.)
 
 
 [4]
 To the extent Modern is suggesting that the provision is unconscionable because Rapid knew it lacked the technological capability to produce a furnace meeting the contract's specifications, Modern has provided us with no authority suggesting that Georgia would recognize a fraudulent inducement theory of unconscionability. We therefore refuse to recognize such a novel theory in this diversity case. Cf. KKO, Inc. v. Honeywell, Inc., 517 F.Supp. 892, 899 (N.D.Ill.1981) (allegations of fraudulent concealment "are not at all relevant to the question whether the exclusion clause is unconscionable.")
 
 
 [5]
 The complaint of which we have been speaking was Modern's first amended complaint. Because Modern had already amended its complaint once as a matter of course, it needed leave of court to file a second amended complaint. See Fed.R.Civ.P. 15(a)