29541, 29542. R. L. KIMSEY COTTON COMPANY, INC. v. FERGUSON et al.; and vice versa.
29543, 29544. R. L. KIMSEY COTTON COMPANY, INC. v. EVANS et al.; and vice versa.

JORDAN, Justice.

This case involves the fundamental question of the validity and enforceability of certain contracts for the purchase of cotton entered into in March of 1973 between the parties to this appeal.

In Case No. 29541 the R. L. Kimsey Cotton Company, Inc., (hereinafter referred to as "Kimsey") brought suit against four defendants, (hereinafter called "farmers") seeking specific performance of four cotton contracts attached to the complaint and injunctive relief to prevent the farmers from disposing of their cotton to anyone other than Kimsey.

In Case No. 29543 Kimsey and W. B. Dunavant & Co., to whom Kimsey had contracted to sell cotton, brought suit against five farmers seeking identical relief against them based on similar cotton contracts attached to the complaint.

Upon consideration of the pleadings, depositions and affidavits and after hearing argument thereon the trial

court denied Kimsey's motion for summary judgment and its motion to strike certain defenses, at the same time denying the farmers' motion for judgment on the pleadings and denying the farmers' motion to dismiss for failure to state a claim. The trial court certified the cases for immediate review. Kimsey is the appellant in Case No. 29541 and Case No. 29543. The farmers' cross appeals are the subject of Case Nos. 29542 and 29544.

Prior to this ruling by the trial court a temporary restraining order was issued and an interlocutory injunction enjoined the defendant farmers from violating their respective contracts; allowed the delivery and sale of the cotton, and required the posting of bonds by both parties to secure the payment of damages incurred by either party pending final judicial determination.

At the hearing in the trial court the parties stipulated that all of the contracts were duly executed by the respective parties; that the cotton in question was unique and injunctive relief was proper; and that all of the defendant farmers had repudiated their contracts.

While admitting the execution of the contracts, the farmers by their pleadings raised essentially four defenses, (1) that the contracts are vague and indefinite in that the subject matter of the contracts cannot be identified as to quantity with sufficient particularity; (2) that the contracts lack consideration and mutuality; (3) that the contracts are so unconscionable that they should not be enforced by the court through specific performance or otherwise, and (4) that there was fraud in the procurement of the contracts.

1. The contracts under consideration here are substantially similar to the contracts involved in the recent case of *Harris v. Hine,* 232 Ga. 183 (205 SE2d 847).

One of the contracts attached to the complaint (all others being identical except for the farmer's name, the price in some instances, the farm location and acreage), reads in part as follows:

"This contract made and entered into this day by and between J. D. Ferguson of Rt. 1, Taylorsville, Georgia, hereinafter referred to as Producer and Seller and R. L. Kimsey Cotton Co., Inc., Rome, Georgia, hereinafter referred to as Buyer. Witnesseth: 1. On the terms and

conditions and at prices hereinafter stated, the Producer and Seller agrees to sell, and the Buyer agrees to buy, all and only the cotton produced by the Producer and Seller during the crop year 1973 on approximately 230 acres situated in Bartow County, Georgia and Polk County, Georgia."

Paragraph 2 of the contract specified the price for all grades and staples at 30.00 cents "except all below grade cotton at 24.50 cents"; specified that the cotton must be hand or spindlepicked and ginned and delivered by December 20, 1973; that no false packed or cotton picked up from the ground and no stripper cotton was eligible.

Paragraph 3 of the contract provided that the "Producer and Seller agrees to practice normal, good farming methods in the production and harvesting of the crop"; to defoliate and gin as fast as practicable; and allowed the Buyer the privilege of "controlling within reason the amount of heat and cleaning equipment to be used in ginning."

Paragraph 4 was eliminated and paragraph 5 pertains only to furnishing samples.

Paragraph 6 listed the farms covered by A. S. C. S. numbers.

Paragraph 7 reads as follows: "We, the Producer and Seller and Buyer, have carefully read and fully understand the terms and provisions of the foregoing contract which represents the entire agreement between the parties, and understand further that there may be no modification of this agreement except in writing."

We unhesitatingly held in *Harris v. Hine,* 232 Ga. 183, supra, that such contracts were "output" contracts for the sale of all of the farmers' cotton produced by them during the crop year 1973 as defined in Code Ann. § 109A-2—306 (1) and not vague and indefinite as to quantity and subject matter. We likewise hold these contracts to be valid as to quantity and subject matter and sufficient to satisfy the requirements of the Uniform Commercial Code Statute of Frauds. Code Ann. § 109A-2—201 (1). See R. N. Kelly Cotton Merchant v. York, 494 F2d 41 (5th Cir. 1974), where the circuit court upheld the validity of a similar contract for the future delivery of cotton against an attack based on Code

§ 20-602.

Specific performance of these contracts is available to the plaintiffs here since the parties stipulated that the cotton involved was unique. Code Ann. § 109A-2—716. Cf. *Duval & Co. v. Malcom,* 233 Ga. 784.

2. It is clear from an examination of the contracts that the farmer(s) obligated to sell and the buyer was obligated to buy "all and only the cotton" produced by the seller for the crop year 1973. Under such circumstances the contracts are supported by good and sufficient consideration and are not lacking in mutuality. "A promise of another is a good consideration for a promise." Code § 20-304. The contracts contain mutual obligations equally binding on both parties to the contracts and were equally enforceable by each.

3. The farmers next contend that the contracts are unconscionable to the extent that they should not be enforced by a court of equity, citing and relying on Campbell Soup Co. v. Wentz, 172 F2d 80 (3d Cir. 1948) and Code Ann. § 109A-2—302. In Wentz, the court looking to all corners of that contract, concluded that "we think it is too hard a bargain and too one-sided an agreement to entitle the plaintiff to relief in a court of conscience." The paragraph found most objectionable by the court in Wentz excused Campbell from accepting carrots under certain circumstances and prevented the seller from selling them elsewhere unless Campbell agreed. That and other objectionable provisions are not present in these cotton contracts.

"The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Comment 1 to Uniform Commercial Code § 2-302. In light of the commercial needs of the cotton business, such contracts are normal and can inure to the benefit of the producer by assuring him not only of a market for his cotton but at a guaranteed price for a fluctuating commodity. The contracts were executed in March 1973, at a price fair at the time. The meteoric rise in the price of cotton between planting and harvest could

hardly have been anticipated by the parties. The evidence shows that Kimsey sold most of the contracted cotton several months later at prices substantially below the highest point reached by the market later in the year.

An unconscionable contract is "such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of." *Hall v. Wingate,* 159 Ga. 630 (i.e.) (126 SE 796); *Martin v. Approved Bancredit Corp.,* 224 Ga. 550 (163 SE2d 885).

Measured by these tests in the light of the general commercial background and needs of the trade and the circumstances existing at the time the contract was made, we do not find the contract or any of its provisions relating to price, production, harvesting or ginning of the cotton to be so unreasonable and one-sided so as to make it unconscionable.

4. The farmers allege in their answer that certain fraudulent misrepresentations were made to them by Kimsey which induced them to execute the contracts. The alleged misrepresentations were to the effect that the price agreed upon was not a fair price and that Kimsey knew that cotton at the time was selling for more; that they were told that other farmers in the area had already signed contracts when that was not true; and that they were told to sign up then because the price would be less in the fall.

In response to these allegations contained in the farmers' amended answer, Kimsey presented undisputed evidence, principally by way of the depositions of the farmers themselves, that 30 cents per pound was a fair price at the time the contracts were signed. They testified that this price was "more than we had been getting"; that the going price at the time was "a little bit under the 30 cents"; that the price "sounded pretty good" and generally that they were "reasonably satisfied" with the price when the contracts were signed. While there was evidence that the futures price of cotton during the latter part of March was in the 36-38 cents range, the further uncontradicted evidence was that the Bartow County crop was figured at 10 cents below the futures quotation due to a difference in quality and grade. Further it was undisputed that the current price of cotton was available to the farmers

through newspapers, radio, and magazines and that most of them kept up with the price.

In response to the second allegation of fraud, the evidence is without dispute that other farmers in the area were contracting their cotton at the same time and for about the same price; that "approximately 75% of the cotton crop" of that area was placed under contract for the year 1973.

As to the third allegation regarding statements as to what the price might be "in the fall" or as to what price Kimsey would be able to sell to the mills at some future date, assuming such statements were made, constitute only predictions or conjecture as to future events and cannot be the basis of fraud.

In the light of this evidence, which pierced the allegations of fraud, the farmers failed to present any evidence in support of their allegations. They now contend that the allegations themselves are sufficient to create an issue of fact as to fraud. We note that the trial court had the same view since the trial court ordered the case to "proceed to a jury trial upon the issue of fraud, *as raised in Defendants' pleadings.*" (Emphasis supplied.) Under the evidence adduced here in support of Kimsey's motion for summary judgment, we cannot agree with this contention.

"When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Code Ann. § 81A-156 (e).

A fair reading of the entire record in this case leads inescapably to the conclusion that the issue of fraud was injected into the case only after the parties had failed to re-negotiate the contracts as to price. The depositions of the defendants clearly show that they were unhappy only when the price of cotton skyrocketed in August and September, and that even then they intended to honor the contracts if they could secure an upward revision of the price. Failing this, they repudiated the contracts and

raised fraud as one of the defenses.

We conclude under this record that the contracts were not invalid or unenforceable for any reason contended; that they were not induced by actionable fraud, and that the trial court erred in not granting the plaintiff's motion for summary judgment.

Under this view we need not rule on the issues raised on the cross appeals.

*Judgments reversed in Case Nos. 29541 and 29543. Cross appeals in Case Nos. 29542 and 29544 dismissed. All the Justices concur.*

ARGUED JANUARY 15, 1975 — DECIDED MARCH 17, 1975.

*Rogers, Magruder & Hoyt, Dudley B. Magruder, Jr., King & Spalding, A. Felton Jenkins,* for appellant.
*Greene & Greene, William B. Greene,* for appellees.