S96G0289. NEC TECHNOLOGIES, INC. v. NELSON et al.
S96G0292, S96G0310. C. M. CITY, INC. et al. v. NELSON et al.
(two cases).
(478 SE2d 769)

HUNSTEIN, Justice.

Arthur and Kathy Nelson brought suit against Curtis Mathes Corporation, C. M. City, Inc. d/b/a Curtis Mathes Home Entertainment Center, and NEC Technologies, Inc. ("NEC"), seeking to recover property damages they sustained in a fire allegedly caused by a defect in the Curtis Mathes television set they had purchased. The Nelsons asserted causes of action sounding in strict liability, negligence, and breach of warranty. Based on language in the express warranty on the television set which provided that the warranty "Excludes All Incidental and Consequential Damages," Curtis Mathes and C. M. City moved for partial summary judgment on the Nelsons' claim for consequential property damages under the breach of warranty claim. Holding as a matter of law that the exclusion was not unconscionable at the time of the sale to the Nelsons, the trial court granted the motion. In regard to the Nelsons' claim that NEC was liable to them as the manufacturer of the television set's electronic components, the trial court granted summary judgment to the corporation, finding that it did not manufacture the electronic components but instead was the exclusive importer, marketer and distributer of the components; the manufacturer of the components was NEC Home Electronics (USA), Ltd. (hereinafter "NEC Ltd."). The trial court further found that NEC was not the alter ego of NEC Ltd. The Court of Appeals reversed the trial court on both issues. *Nelson v. C. M. City, Inc.*, 218 Ga. App. 850 (4), (6) (463 SE2d 902) (1995). We granted certiorari to consider that court's rulings on both of these issues. We reverse.

1. Georgia law expressly allows manufacturers of products to limit or exclude consequential damages. OCGA § 11-2-719 (3). However, manufacturers may not limit or exclude such damages where the result would be unconscionable. Id. The Legislature recognized both the distinction between consumer and commercial purchasers of products and the distinction between personal injury and property damages, in that OCGA § 11-2-719 (3) expressly states that a limitation on consequential damages for personal injury in the case of consumer goods is prima facie unconscionable.[1] The Legislature could

---

[1] OCGA § 11-2-719 (3) provides:
Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

have provided that a limitation on consequential property damages in the case of consumer goods is prima facie unconscionable, as it did with consequential damages for personal injuries, but it chose not to do so. Warranty limitations on the recovery of consequential damages to property in consumer cases have been upheld. E.g., *McCrimmon v. Tandy Corp.*, 202 Ga. App. 233 (3) (414 SE2d 15) (1991); *Sharpe v. General Motors Corp.*, 198 Ga. App. 313 (5) (401 SE2d 328) (1991). It follows from a review of OCGA § 11-2-719 (3) and case law that only those limitations/exclusions on consequential property damages in consumer cases that are "unconscionable" are barred under Georgia law.

The Uniform Commercial Code and the Georgia UCC, see OCGA § 11-1-101 et seq., contain no definition of "unconscionability." This Court has noted that the basic test for determining unconscionability is

> "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Comment 1 to Uniform Commercial Code § 2-302.

*R. L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 965 (3) (214 SE2d 360) (1975).[2] However, the process by which a court reaches the conclusion that a contract provision is unconscionable has been discussed by our appellate courts only in abbreviated and conclusory fashion. E.g., *Ga. Magnetic Imaging v. Greene County Hosp. Auth.*, 219 Ga. App. 502 (5) (466 SE2d 41) (1995); *Fiat Auto U. S. A. v. Hollums*, 185 Ga. App. 113 (2) (363 SE2d 312) (1987). Thus, to assist this Court in resolving this appeal, we have found it helpful to conduct a review of foreign authorities.

It has been recognized that "unconscionability" as set forth in UCC § 2-302 is "not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula." (Footnote and emphasis deleted.) Vol. 1, White & Summers, Uniform Commercial Code (4th ed.), p. 213, § 4-3. See also *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 120 (App. 1982) (unconscionability is "a flexible doctrine designed to allow courts to directly consider numer-

---

[2] Other definitions of an unconscionable contract include " 'such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of,' [cit.]," *R. L. Kimsey Cotton Co. v. Ferguson*, supra, 233 Ga. at 966 (3) and a contract that is " 'abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another.' " *F. N. Roberts Pest Control Co. v. McDonald*, 132 Ga. App. 257, 260 (208 SE2d 13) (1974).

ous factors which may adulterate the contractual process"). Foreign courts have generally divided the relevant factors into procedural and substantive elements. See UCC-Unconscionable Warranty Disclaimer, 38 ALR4th 25, §§ 2, 3 (a) (b). Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves. Id.; White & Summers, supra. A non-inclusive list of some factors courts have considered in determining whether a contract is procedurally unconscionable includes the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice. See, e.g., *Fotomat Corp. of Fla. v. Chanda*, 464 S2d 626, 629 (Fla. App. 5th Dist. 1985); *Wille v. Southwestern Bell Tel. Co.*, 549 P2d 903, 906-907 (Kan. 1976) (commercial transaction); *Schroeder v. Fageol Motors*, 544 P2d 20, 23 (Wash. 1975). See also White & Summers, supra, p. 215, § 4-3, fn. 15. As to the substantive element of unconscionability, courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns. See, e.g., *Fotomat Corp. of Fla. v. Chanda*, supra, 464 S2d at 629; *A & M Produce Co. v. FMC Corp.*, supra, 186 Cal. Rptr. at 122 (commercial transaction). See also White & Summers, supra, §§ 4-4 through 4-6. We find the procedural-substantive analysis of unconscionability helpful and apply it to the case at bar.

2. For purposes of addressing the motion for partial summary judgment on the consequential property damages issue, the trial court assumed, despite sharply contested evidence adduced by the parties, that the television set was indeed defective.[3] The trial court then considered the evidence before it, consisting of documentary evidence such as the warranty issued by Curtis Mathes[4] as well as the

---

[3] The trial court noted that the city fire chief and the fire marshall opined that the fire started from an electrical shortage unassociated with the television set, while the Nelsons' expert opined the fire originated around a defective resistor in the set.

[4] There is some dispute whether the applicable warranty was a six-year or a four-year warranty. Construing the evidence in favor of the Nelsons, as respondents on motion for summary judgment, we will presume the applicability here of the six-year warranty. That warranty was denominated an "Exclusive Six Year Limited Protection Plan." It stated the protection plan was provided by Curtis Mathes Corporation; explained who was covered, how long they were covered and what was covered; and set forth the steps an owner was required to follow to obtain service and possible costs therefor. Under the bold-faced section titled "What Are The Exceptions," there were several brief paragraphs containing various exclusions, such as for damages caused by abuse and acts of nature, shipping and handling charges, and non-coverage of commercial or educational use. The fifth paragraph provides:
This Exclusive Limited Protection Plan Excludes All Incidental and Consequential

affidavits and depositions of the parties and other witnesses regarding matters such as the manner in which the Nelsons chose a Curtis Mathes television set and how the parties contracted for the purchase of the television set. The trial court expressly pronounced this evidence sufficient to render it unnecessary to hold a hearing as to the warranty's commercial setting, purpose, and effect under OCGA § 11-2-302 (2). The trial court granted partial summary judgment to Curtis Mathes and C. M. City on the basis that it was not unconscionable at the time of the sale of the product, see OCGA § 11-2-302 (1), to exclude recovery of consequential property damages and limit recovery to the replacement of parts, service, labor and like matters.

Our review of the record regarding all of the circumstances surrounding the process in which these parties entered into the contract for the purchase of the television set reveals no basis for concluding the warranty exclusion should be voided for procedural unconscionability. The language setting forth the warranty exclusion was conspicuous and comprehensible; the warranty apprised consumers that the absolute language in an exclusion may not apply to them; and the warranty itself provided a source to be contacted if further information or clarification was desired. See fn. 4, supra. Ms. Nelson in her deposition detailed the manner in which the television set was purchased.[5] She deposed that she had owned for five years a forty-inch Curtis Mathes television when she decided (during the course of moving furniture to another home) that rather than move the old set, she would exchange it for a new set. She contacted C. M. City and asked a salesperson if the store was interested in an exchange. She was informed that the 40-inch model was no longer available and that the most comparable model had a 46-inch screen. Ms. Nelson arranged during this telephone conversation to have C. M. City pick up the old set and deliver a new 46-inch television to the other home. She received $500 for the trade-in and paid the $1,970.80 balance on the new set in cash. She was aware there was a six-year warranty on the set; the sales receipt also reflects a handwritten notation regard-

---

Damages. Some states do not allow the exclusion of incidental or consequential damages, so the above exclusion may not apply to you.
This language is followed by a paragraph excluding implied warranties. The warranty concludes with the statement that the protection plan "gives you specific legal rights. You may have other rights which vary from state to state," and then provides that "[f]or further information about this Protection Plan" interested individuals could contact the Curtis Mathes Protection Plan Administrator, setting forth an address and telephone number.

[5] It is uncontroverted that Mr. Nelson was not involved in the purchase of the set. The record does not reflect Ms. Nelson's education or age, though it appears that at the time of the purchase she was a mature adult (in that she had recently married Mr. Nelson after the end of a first marriage that had lasted 40 years) and that she possessed some business experience (having worked in a furniture store and as a manager's assistant).

ing the six-year warranty. Although employees of C. M. City were deposed, they were unable to provide any further details regarding the transaction.

The record as developed reveals no evidence that the Nelsons looked at other manufacturers' sets, compared warranties between sets available on the market, or made any inquiry of C. M. City or other dealers regarding the extent of warranties available on such sets. The record does reflect that Ms. Nelson was able to bargain over certain matters in the contract, such as the trade-in of the old set and delivery arrangements, and there is some evidence that Ms. Nelson obtained the benefit of a six-year warranty rather than a four-year warranty on the television set. However, there is no evidence that any other aspect of the warranty played any part in the bargaining process or in Ms. Nelson's decision to purchase the television set. Given this evidence, we conclude that Curtis Mathes and C. M. City discharged their burden as movants for summary judgment by demonstrating from the testimony and documents adduced that there is an absence of evidence to support a finding of procedural unconscionability in the warranty limitation in issue. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

3. We pretermit the issue whether the lack of procedural unconscionability in this case is determinative of the unconscionability issue[6] because we conclude that there is likewise an absence of evidence to support a finding of substantive unconscionability.

Initially, we recognize that the exclusion of consequential property damages in the warranty cannot, in and of itself, be deemed to be against public policy since, as discussed in Division 1, supra, the Legislature has allowed manufacturers to so exclude consequential property damages. What the Legislature allows cannot be contrary to public policy. *Avery v. Aladdin Products Div. &c.*, 128 Ga. App. 266 (2) (196 SE2d 357) (1973).[7]

OCGA § 11-2-302 (1) directs the trial court to determine as a matter of law whether a contract or any clause thereof was uncon-

---

[6] Research supports the statement made in *Fotomat Corp. of Fla. v. Chanda*, supra, 464 S2d at 629, that

[m]ost courts take a "balancing approach" to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability.

[7] Similarly, because the Legislature also provides a trial court with the authority to refuse to enforce any part of a contract it deems unconscionable or to limit the application of any unconscionable clause as to avoid any unconscionable result, OCGA § 11-2-302 (1), we find meritless the Nelsons' argument that the entire exclusion clause at issue should be stricken as unconscionable because the exclusion fails to differentiate between damage to property and personal injury. Because the Nelsons' claim involves only property damages, they cannot show how the exclusion of consequential damages for personal injury was unconscionable as to them.

scionable "at the time it was made": the unconscionability of a contract is not to be judged based on subsequently-acquired knowledge. See White & Summers, supra, p. 211, § 4-3. There is nothing in the record to indicate that at the time the Nelsons executed the sales contract for their television set, they were not aware of the normal hazards associated with the use of any electrical appliance. A review of the record before the trial court reveals nothing to indicate that Curtis Mathes or C. M. City had any knowledge that the particular design of television set purchased by the Nelsons posed any greater danger than that presented by other products designed to utilize electricity in their operation. A warranty that limited the consumer's remedy to the replacement of parts, labor, services, and perhaps the value of the television set itself was not unreasonable as a matter of law in light of the remote, albeit dire, possibility that a defect might be present in the television set and that the consequences of the defect might be a fire that could extend beyond the set itself. Thus, while it has been recognized that a contractual term "is substantively suspect if it reallocates the risks of the bargain in [an] objectively unreasonable or unexpected manner, [cits.]" *A & M Produce Co. v. FMC Corp.*, supra, 186 Cal. Rptr. at 122, we cannot conclude under the circumstances in this case that the allocation of the risk of property damage to the Nelsons was unconscionable. We recognize that to hold this exclusion of consequential property damages unconscionable could necessitate voiding as unconscionable such exclusions in the warranties of virtually every type of electrical appliance sold to a consumer, a result clearly contrary to the provisions of OCGA § 11-2-719 (3).

The Court of Appeals found the exclusion in this case to be unconscionable "given the manufacturer's (Curtis Mathes's) use of its name and reputation as the manufacturer of superior quality products, while failing to disclose that it did not actually manufacture the product." *Nelson v. C. M. City, Inc.*, supra, 218 Ga. App. at 854. The Court of Appeals previously held in the same opinion that Curtis Mathes *was* the manufacturer of the television set, in that "the television was manufactured, prepared, assembled, and packaged according to *Curtis Mathes's* own 'plan, intention, design, specifications, [and] formulation.' [Cit.]" Id. at 852 (2). Given that the Nelsons themselves assert for purposes of strict liability that Curtis Mathes was the manufacturer of the television set and have sought and obtained such a ruling from the Court of Appeals, see id., we cannot agree with the Court of Appeals that the Nelsons can claim Curtis Mathes is a manufacturer for strict liability but use the fact that Curtis Mathes did not manufacture the product to void a warranty limitation on the basis of unconscionability. Further, given that the unconscionability of contractual provisions is determined as a matter

of law, OCGA § 11-2-302 (1), we reject the Court of Appeals' holding that as a matter of law a manufacturer commits fraud by selling under its own label and as its own wares a complex product such as a television set which contains components that were not in every aspect designed, formulated, fabricated, constructed, and assembled exclusively by the manufacturer. Such a holding fails to reflect the reality and complexity of today's world-wide marketplace. Because there is an absence of evidence that Curtis Mathes or C. M. City acted fraudulently in the particular manner in which this television set was sold to the Nelsons, see *Lau's Corp. v. Haskins*, supra, the trial court correctly held that the exclusion in issue was not unconscionable.

4. OCGA § 11-2-302 provides Georgia courts with a potent tool for shielding disadvantaged and uneducated consumers from overreaching merchants. However, Georgia law also recognizes and protects the freedom of parties to contract. See, e.g., *National Consultants v. Burt*, 186 Ga. App. 27, 32 (366 SE2d 344) (1988).

> " 'People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms *of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice*, that equity will deny the use of its good offices in the enforcement of such unconscionability.' "

*Fotomat Corp. of Fla. v. Chanda*, supra, 464 S2d at 630. Based on a review of the evidence in light of both procedural and substantive elements of unconscionability, we cannot conclude as a matter of law that decent, fairminded persons would possess a profound sense of injustice from the enforcement of this warranty provision excluding the recovery of consequential property damages in the sale of a television set so as to render the exclusion unconscionable under OCGA § 11-2-302. Therefore, the Court of Appeals erred by reversing the trial court when it found that the warranty provision excluding the Nelsons from recovering consequential property damages was not unconscionable and that the Nelsons can recover under their breach of warranty claim only those damages allowed by the warranty. We note that this holding will not leave the Nelsons without recourse for their property damages, as they may seek to recover those losses

under their strict liability and negligence causes of action.

5. The other matter we granted certiorari to consider was the Court of Appeals' ruling that a fact question exists whether NEC was the alter ego of NEC Ltd., the corporate manufacturer of the electronic components in the Curtis Mathes television set. *Nelson v. C. M. City, Inc.*, supra at (6). The Court of Appeals reversed the trial court's order in which the trial court had granted summary judgment to NEC on all of the Nelsons' claims on the basis that NEC was not the manufacturer or ostensible manufacturer of the television set and that no privity existed between NEC and the Nelsons.

To establish the alter ego doctrine a plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or by confusing otherwise separate properties, records or control, *American Cas. Co. v. Schafer*, 204 Ga. App. 906 (3) (420 SE2d 820) (1992), or by showing that a disregard of the corporate entity made it a mere instrumentality for the transaction of the other entity's own affairs and that there is such unity of interest and ownership that the separate personalities of the corporations no longer exist. See *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772 (3) (399 SE2d 529) (1990). The evidence must be such that " 'to adhere to the doctrine of corporate entity would promote injustice or protect fraud.' [Cits.]" *Farmers Warehouse of Pelham v. Collins*, 220 Ga. 141, 150 (137 SE2d 619) (1964).

Our review of the record reveals uncontroverted evidence that the electronic components in the Curtis Mathes television set were manufactured by NEC Ltd.; that NEC acted solely as the importer and distributor of the components; that there was no evidence adduced of any commingling of money, facilities or records between the two corporations; and no evidence that the corporations shared officers or employees. Although the Court of Appeals relied on the Nelsons' assertion that "NEC Ltd. performed its business in the United States through NEC," *Nelson v. C. M. City, Inc.*, supra, 218 Ga. App. at 855 (6), there is no evidence which would suggest that NEC was acting as the mere instrumentality or alter ego of NEC Ltd. in importing and delivering the product. See *Frey v. Pepsico, Inc.*, 191 Ga. App. 585 (1) (382 SE2d 648) (1989). Finally, in light of the lack of evidence showing the existence of any of the factors enumerated above, we do not agree with the Court of Appeals that a fact question is created by a Curtis Mathes agent's inability to distinguish between NEC and NEC Ltd. See generally *American Cas. Co. v. Schafer*, *Artrac Corp. v. Austin Kelley Advertising*, supra.

The record in this case, even when construed most favorably to the Nelsons, reveals an absence of any evidence establishing the existence of fact questions regarding the alter ego issue. See generally *Lau's Corp. v. Haskins*, supra. The trial court thus correctly

granted summary judgment to NEC.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 25, 1996 —
RECONSIDERATION DENIED DECEMBER 20, 1996.

*Dillard, Bower & East, Bryant H. Bower, Jr., Jenkins & Nelson, Robert W. Lamb, Hunter, Maclean, Exley & Dunn, Glen M. Darbyshire,* for NEC Technologies, Inc.

*Jones & Smith, Julian B. Smith, Jr., David N. Nelson, Howard & Whatley, Molly M. Howard, Thomas G. Whatley, Jr.,* for C. M. City et al.

*Newton, Smith, Durden & Kaufold, Howard C. Kaufold, Jr., Robert E. Perrine, Jr.,* for Nelson et al.