[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15399

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 28, 2011
JOHN LEY
CLERK

D. C. Docket No. 09-23067-CV-JLK

FAITH GORDON,
on behalf of herself and all
others similarly situated,

Plaintiff-Appellee,

versus

BRANCH BANKING AND TRUST,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 28, 2011)

Before MARCUS and ANDERSON, Circuit Judges, and MILLS,* District Judge.

MARCUS, Circuit Judge:

_____

* Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

Branch Banking and Trust ("BB&T") appeals the denial of its motion to compel Faith Gordon to arbitrate her consumer complaint. The district court ruled that the arbitration provision in Gordon's contract was unenforceable because the arbitration provision's non-severable waiver of the right to a class action was substantively unconscionable under Georgia law. After thorough review, we affirm.

I.

In 2008, Gordon opened a consumer checking account with BB&T. The Bank Services Agreement between Gordon and BB&T includes an arbitration provision that applies to "[a]ny claim or dispute" between the parties. The arbitration agreement empowers the arbitrator to "award all available remedies," including "attorneys' fees and costs." It also includes a class action waiver; by signing the agreement, Gordon agreed to waive her right to participate in a class action lawsuit or class action arbitration. The class action waiver is non-severable; the arbitration agreement provides that "if the limitations on class actions are struck in a proceeding brought on a class, representative or private attorney general basis, . . . this entire arbitration provision . . . shall be null and void in such proceeding."

2

In May 2009, Gordon filed a putative class action complaint in Georgia state court. Gordon's complaint alleges that BB&T routinely posts charges incurred to consumers' accounts in order from largest to smallest amounts, even when the larger charges occur days after the smaller charges. It claims that this policy necessarily results in the unfair assessment of excessive overdraft charges. The complaint asserts claims for breach of contract, conversion, unconscionability, and unjust enrichment on behalf of Gordon and all BB&T account holders "who incurred an overdraft charge despite their account having a sufficient balance of actual funds to cover all debits that have been submitted to the bank for payment" or "who incurred one or more overdraft charges based on BB&T's reordering of charges."

In June 2009, BB&T removed the case to the United States District Court for the Northern District of Georgia under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), and moved to compel Gordon to arbitrate her dispute on an individual basis pursuant to the Bank Services Agreement. Gordon resisted arbitration on the ground that the class action waiver was substantively unconscionable under Georgia law, and therefore the arbitration provision as a whole was unenforceable. The district court denied BB&T's motion to compel arbitration, ruling that the class action waiver in Gordon's arbitration agreement

3

was unconscionable based on this Court's decision in Dale v. Comcast Corp., 498 F.3d 1216 (11th Cir. 2007).

This case was then transferred to the Southern District of Florida and consolidated by the Judicial Panel on Multi-District Litigation with other lawsuits challenging various banks' assessments of overdraft charges. Following the transfer, BB&T moved the Florida district court for reconsideration of the order issued by the Georgia district court denying its motion to compel arbitration. BB&T's motion for reconsideration was denied. Now BB&T appeals the denial of its motion to compel arbitration and the denial of its motion for reconsideration.

## II.

The Federal Arbitration Act provides that binding arbitration clauses are enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 U.S.C.] § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). We look to state contract law to determine whether an arbitration provision is unconscionable and therefore unenforceable. See Dale, 498 F.3d at 1219 n.2; Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002) ("The FAA allows state law to invalidate an

arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically.").

Georgia law recognizes both procedural unconscionability and substantive unconscionability. See NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 771 (Ga. 1996). "Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." Id. Here, we consider the claim that the class action waiver is substantively unconscionable -- that is, "'whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.'" Id. (quoting U.C.C. § 2-302 cmt. 1).

We are aware of no opinions of the Georgia Supreme Court or Georgia's appellate courts addressing the enforceability of a class action waiver. This Court has applied Georgia law in addressing this issue on a few occasions but has not adopted a bright-line rule. We have upheld class action waivers in some contexts, see, e.g., Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1377-79 (11th Cir. 2005); Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 878 (11th Cir. 2005), and have held such waivers to be substantively unconscionable

5

in other contexts.  See Dale, 498 F.3d at 1224; Jones v. DirecTV, Inc., 381 F.

App'x 895, 897 (11th Cir. 2010) (unpublished).  In Dale, we explained that "the

enforceability of a particular class action waiver in an arbitration agreement must

be determined on a case-by-case basis, considering the totality of the facts and

circumstances."  498 F.3d at 1224.  We listed  circumstances that may be relevant

in any given case, including:

> the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical [e]ffect the waiver will have on a company's ability to engage in unchecked market behavior, and related policy concerns.

Id.

The facts and circumstances of this case lead us to conclude that the class

action waiver is unconscionable.  Gordon brings a consumer action challenging

BB&T's assessment of overdraft fees.  While the parties dispute the total amount

of Gordon's potential recovery, it is undisputed that each overdraft fee is $35.[1]

Gordon's anticipated recovery -- $35 multiplied by the number of times the fees

---

[1] BB&T asserts that Gordon overdrew her account on fifty-nine separate occasions resulting in overdraft fees of $2,285 (although we note that $35 multiplied by fifty-nine equals $2,065). Gordon counters that she does not contest the propriety of at least some of the overdraft charges. She therefore argues that her potential recovery is considerably less than $2,285.  We need not determine the precise amount in controversy in this case.  Even if the value of Gordon's claim is $2,285, the costs of arbitration -- attorneys' fees in particular -- would likely far exceed her potential recovery.

6

were improperly charged to her account -- would be exceeded by attorneys' fees and other costs associated with individual arbitration. Most significantly, if Gordon successfully prosecutes her claims, we cannot say it is certain, or even likely, that she would be awarded expenses in an amount sufficient to recoup the costs of arbitration. Georgia law permits, within the discretion of the fact-finder, an award of attorneys' fees and costs "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Ga. Code Ann. § 13-6-11. We held in Dale that the precatory nature of attorneys' fees under Ga. Code Ann. § 13-6-11 "does not provide the same incentive for an attorney to represent an individual plaintiff as the automatic, or likely, award of fees and costs available to a prevailing plaintiff" under statutes that mandate an award of attorneys' fees. 498 F.3d at 1223 (distinguishing Jenkins and Caley on this basis). Accordingly, we conclude that Gordon would probably be unable to secure adequate representation to prosecute her claims were the class action waiver to be enforced.[2]

---

[2] Gordon's complaint states a claim for conversion, which, as an intentional tort, "invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation." DeKalb Cnty. v. McFarland, 203 S.E.2d 495, 499 (Ga. 1974). BB&T claims that Gordon's greater likelihood of obtaining attorneys' fees under the intentional tort claim distinguishes this case from Dale. But BB&T cannot get around the fact that Ga. Code Ann. § 13-6-11 is permissive; it leaves to the sound discretion of the fact-finder whether to award fees and expenses, even where a plaintiff succeeds in prosecuting a claim for an intentional tort. See, e.g., Multimedia Techs., Inc. v. Wilding, 586 S.E.2d 74, 80 (Ga. Ct. App. 2003) (declining to mandate an award of attorneys' fees after successful

BB&T argues nevertheless that a provision in the contract permitting a party to bring an action in small-claims court as an alternative to arbitration provides an adequate avenue for consumers to advance their claims with minimal expense and without the aid of an attorney. We agree that in some circumstances, the small-claims forum would be a viable option for consumers seeking to bring claims that a layperson may reasonably be expected to pursue without the assistance of an attorney. Gordon's claims, however, are plainly not of the kind that could be effectively prosecuted without the benefit of attorney assistance. The heart of Gordon's Complaint is that BB&T "routinely enforces a policy whereby charges incurred are posted to consumers' accounts in order of largest to smallest amounts, even when larger charges occur days after smaller charges." The Bank Services Agreement states that BB&T "may process items for payment" against a customer's account "in any order that [it] choose[s]." The Bank Services Agreement further cautions the customer that "[t]his method . . . could result in additional overdrafts" on the customer's account. Recognizing this contractual language, Gordon states in her Complaint that "[e]ven if Plaintiff was given materials containing language that could possibly be interpreted to authorize or disclose BB&T's practices as described above, any such notice or authorization

prosecution of a conversion claim).

8

was inadequate and ineffective. Furthermore, BB&T's reservation of discretion to reorder transactions and assess overdraft fees is constrained by its obligation to deal fairly and in good faith." It is clear that in order to succeed in her claim, Gordon must establish that notwithstanding the contractual language, BB&T's practice violates Georgia law regarding the obligation to deal fairly and in good faith, which undeniably requires legal expertise and an understanding of both the Uniform Commercial Code and Georgia common law. See Stuart Enters. Int'l, Inc. v. Peykan, Inc., 555 S.E.2d 881, 883-84 (Ga. Ct. App. 2001) (noting the implied covenant of good faith and fair dealing "modifies the meaning of all explicit terms in a contract," and has a basis in both statutory and common law).[3]

At oral argument, BB&T claimed that Gordon would have no difficulty in mounting the factual allegata needed to support her claims without the assistance of an attorney. Even assuming arguendo that BB&T is correct, however, Gordon would still likely require an attorney to successfully marshal and prosecute the complex legal arguments surrounding her factual showings. Under the particular circumstances in this case, the availability of the small-claims forum does not obviate our concern that enforcing the class action waiver would in effect prevent

---

[3] We emphasize that the merits of Gordon's underlying claims are not before us, and we offer no opinion on their proper resolution.

consumers like Gordon from challenging the practices alleged to be unlawful in her complaint.

## III.

Notably, a panel of this Court recently upheld a class action waiver in a consumer arbitration agreement in Cappuccitti v. DirecTV, Inc., 623 F.3d 1118 (11th Cir. 2010). We reiterated that the proper inquiry under Georgia law is whether the class action waiver is unconscionable "under the circumstances existing at the time of the making of the contract." Id. at 1124 (quoting NEC Techs., 478 S.E.2d at 771). "To answer that question the district court needed to consider all of the remedies available to Cappuccitti under Georgia law at the moment he contracted with DirecTV." Id. at 1126. We concluded that Cappuccitti had an extant statutory claim under the Georgia Fair Business Practices Act ("FBPA"), Ga. Code Ann. §§ 10-1-390 et seq., which provides for attorneys' fees and costs,[4] and therefore "attorney's fees and litigation expenses

---

[4] Ga. Code Ann. § 10-1-399(d) provides:

> If the court finds in any action that there has been a violation of [the FBPA], the person injured by such violation shall, in addition to other relief provided for in this Code section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and expenses of litigation incurred in connection with said action . . . .

would [have] be[en] available to him" had he but pleaded the claim. Cappuccitti, 623 F.3d at 1127.

In light of Cappuccitti, BB&T now argues for the first time in a notice of supplemental authority that Gordon had a palpable claim under the FBPA at the time she entered into a contract with BB&T, and that the mandatory award of attorneys' fees and costs inherent in a successful FBPA claim distinguishes the appeal before us from Dale. As BB&T conceded at oral argument, it never raised this issue in the district court or indeed in its initial or reply briefing to this Court.

BB&T raises the issue a day late and a dollar short. We have held repeatedly that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (collecting cases) (quoting Walker v. Jones, 10 F.3d 1569, 1572 (11th Cir. 1994), cert. denied, 511 U.S. 1111 (1994)).[5] "The reason for this prohibition is plain: as a court of appeals, we review

---

[5] We recognize that this rule is "not a jurisdictional limitation but merely a rule of practice." Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360 (11th Cir. 1984). We therefore have permitted the resolution of issues raised for the first time on appeal under five circumstances:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is

claims of judicial error in the trial courts." Access Now, 385 F.3d at 1331. Here,

BB&T never gave the district court the opportunity to consider whether Gordon

had a palpable claim arising under the FBPA. Moreover, BB&T was on notice

about the possibility of raising the issue well before we decided Cappuccitti.

Indeed, a district court in the Northern District of Georgia had held in White v.

Wachovia Bank, N.A., 563 F. Supp. 2d 1358, 1369 (N.D. Ga. 2008), that

consumer checking account holders making substantially similar claims to those

alleged by Gordon here sufficiently stated a claim under the FBPA for purposes of

surviving a motion to dismiss.

But even if BB&T had properly raised its argument in the district court, it

would have abandoned the argument by failing to brief it on appeal. "Parties must

submit all issues on appeal in their initial briefs." United States v. Nealy, 232 F.3d

825, 830 (11th Cir. 2000); Fed. R. App. P. 28(a)(5); 11th Cir. R. 28-1(h). A party

abandons an argument by failing to do so. See, e.g., United States v. Campa, 529

---

at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below . . . where the proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

Access Now, 385 F.3d at 1332 (quoting Dean Witter Reynolds, 741 F.2d at 360-61 (footnotes and internal citations omitted)) (alteration in original). As we see it, none of these exceptional circumstances are met here.

12

F.3d 980, 989 (11th Cir. 2008) (arguments not made in a party's initial brief are abandoned); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (issue is abandoned on appeal when appellant "elaborates no arguments on the merits as to th[e] issue in its initial or reply brief"). A claim that has been abandoned need not be addressed by this Court. See Access Now, 385 F.3d at 1330 (holding that where an issue is abandoned, this Court "do[es] not address its merits"); United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("Under our caselaw, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue -- even if properly preserved at trial -- will be considered abandoned."). "Evaluating an issue on the merits that has not been raised in the initial brief would undermine the very adversarial nature of our appellate system," Access Now, 385 F.3d at 1330, because without full briefing, evaluation of the argument's merits would undermine appellants' ability to control the issues raised and deprive appellees of the opportunity to respond adequately.

When new authority arises after a brief is filed or after oral argument but before a decision, the Federal Rules of Appellate Procedure permit parties to submit supplemental notice of "pertinent and significant authorities" regarding issues already developed in the briefs. Fed. R. App. P. 28(j). But Rule 28(j) does

not grant parties a license to raise wholly new issues, even when the issues arise from intervening developments in the law. See McGinnis v. Ingram Equip. Co., 918 F.2d 1491, 1495-96 (11th Cir. 1990) (holding waiver bars consideration of "new arguments and issues not presented until a late stage of the proceedings," as distinguished from "new law that could be applied to arguments already developed"). In sum, "parties cannot properly raise new issues at supplemental briefing." United States v. Levy, 416 F.3d 1273, 1275 (11th Cir. 2005) (quoting Nealy, 232 F.3d at 830).

Because BB&T's argument that Gordon could have pleaded an extant statutory claim providing for mandatory attorneys' fees is not properly before us, we have no occasion to examine the breadth or impact of Cappuccitti. We concede that if the argument had been properly raised, it would be a serious and substantial one. But BB&T never raised it and we are not willing to take it up now for the first time.

## IV.

Like the district court, we believe that enforcing the class action waiver in this case would prevent consumer checking account holders like Gordon from obtaining needed representation to challenge practices by BB&T that may be unlawful. Therefore, we hold that the district court did not err in denying BB&T's

14

motion to compel arbitration, and in denying the motion for reconsideration.  The

district courts' orders are **AFFIRMED**.