[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14553
Non-Argument Calendar

_____

D.C. Docket No. 5:16-cv-00060-RSB-BWC

JOHN JAMES,
individually,

Plaintiff,

ROW EQUIPMENT, INC.,

Plaintiff – Appellant,

versus

TEREX USA, LLC,
d.b.a Terex Environmental Equipment,

Defendant - Appellee,

TEREX FINANCIAL SERVICES, INC.

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(May 25, 2021)

Before MARTIN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

ROW Equipment ("ROW")[1] bought two wood chippers from Terex USA ("Terex"). After ROW experienced difficulties with both chippers, ROW sued Terex claiming it had breached its express warranty. Ultimately, a jury disagreed and judgment was entered in favor of Terex. ROW moved for a new trial, but the district court denied that motion. ROW now appeals that denial. After careful review, we affirm.

## I.

ROW is a land-clearing company that also rents out heavy equipment. Terex is a construction equipment manufacturer. In 2012, ROW bought a wood chipper, the Woodsman Biomass Chipper 430TL machine, from Terex (the "2012 chipper"). In 2014, ROW bought a second wood chipper from Terex (the "2014 chipper"). Based on ROW's extensive experience dealing in heavy machinery, it negotiated with Terex to extend the warranty on both chippers to two years or 2000 hours of use (whichever came first) as well as a 20% discount on the non-warrantied parts.

Both chippers were covered by Terex's standard warranty, which provided that the chippers were to be "free, under normal use and service, of any defects"

---

[1] John James is the owner of ROW Equipment. We refer to appellants collectively as "ROW."

for the agreed upon time or use period.  The warranty excluded operational maintenance services.  The warranty also disclaimed Terex's liability for any incidental or consequential damages.

ROW experienced problems with both chippers.  ROW rented out the 2012 chipper to another land-clearing company, which reported that the chipper was not as productive as expected.  When ROW used the 2012 chipper itself, the chipper had electrical problems and often stopped functioning unexpectedly.  In 2013, the chipper started breaking down on a weekly basis.  When the chipper was used on a job that ran from 2013 to 2014, it stopped up several times a day.

The yoke on the 2014 chipper broke within the first two weeks of use.  When the 2014 chipper was used on a job in Louisiana, it often would not start at all.  And the 2014 chipper once turned on by itself and started blowing woodchips onto the interstate highway.

Based on these problems, ROW sued Terex, bringing a number of claims including breach of express warranties.  The district court granted Terex summary judgment on all claims except as to ROW's claim that Terex breached its express warranty that the wood chippers would be free of any defects.  That claim went to trial before a jury in December 2019.

ROW sought to introduce lay testimony from Shane Dinkins about his experience with a different model of wood chipper that he bought from Terex.

3

Dinkins had also observed problems with the chippers ROW purchased from Terex. The district court allowed Dinkins to testify about the problems he observed with ROW's chippers, but not his experience with his own chipper. The district court based its ruling on three factors: (1) Dinkins bought a significantly different model of chipper than those owned by ROW; (2) Dinkins's testimony about his own chippers could confuse the jury; and (3) if Dinkins did indeed have the same sorts of problems with his own chipper, his testimony would be unnecessarily cumulative which would prejudice Terex.

At trial, the jury heard testimony from ROW and Terex employees about problems with both of ROW's chippers and Terex's responses to ROW's complaints. ROW employee Devon Milligan testified about electrical problems he experienced with the 2012 chipper, as well as boom and clutch problems with the 2014 chipper. Milligan also testified that Terex fixed both chippers in July 2014. David Cason, another ROW employee, testified about the yoke breaking on the 2012 chipper and clogging which caused the engine to overheat, and yoke problems on the 2014 chipper. Cason also testified that Terex repaired the 2014 chipper by pulling the yoke out and rewelding the shaft. Terex employee Michael Boeneman testified that Terex made numerous repairs to both chippers. Former Terex employee Kristopher Snyder testified that Terex fixed the engine on the 2012 chipper after it failed, even though the engine was in fact warrantied by

4

another company.  Another former Terex employee, Thomas Feichtinger, testified that Terex never refused to repair or replace any warrantied parts on either chipper, and even provided several parts not covered by the warranty.  ROW employee Johnny Brannon testified about problems with the chippers that Terex fixed.  One ROW employee, Jerry Stephens, testified that one of the chippers had major problems with its belt, but also acknowledged that Terex shipped a replacement belt overnight.

Before the jury rendered a verdict, Terex filed a Rule 50 motion for judgment as a matter of law on ROW's claims that the incidental and consequential damages provision in Terex's warranty was unconscionable.  The district court granted Terex's motion.

The rest of ROW's claims were submitted to the jury, which found in favor of Terex.  ROW filed a motion for a new trial, which the district court denied.  This is ROW's appeal.

## II.

ROW raises four issues on appeal, arguing that: (1) the district court abused its discretion when it excluded lay testimony from Shane Dinkins about his experience with a wood chipper that he purchased from Terex; (2) the jury verdict went against the great weight of the evidence; (3) the district court erred when it granted Terex's Rule 50 motion on the issue of unconscionability of the express

warranty; and (4) the district court erred when it failed to instruct the jury on the issue of consequential damages.  We address each in turn.

ROW first argues that a new trial is warranted because it should have been permitted to elicit testimony from Dinkins about his experiences with his own wood chipper.  We review the district court's evidentiary rulings for a clear abuse of discretion.  Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1068 (11th Cir. 2014).  A district court abuses its discretion when it "applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous."  Id. (quotation marks omitted).  When a party seeks a new trial on the ground that evidence was improperly excluded, "a new trial is warranted only where the error has caused substantial prejudice to the affected party."  Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004).

ROW says Dinkins's testimony about his experience with his own wood chipper was necessary to impeach Terex's opening statement that it stood behind all its products.  Yet, the district court first found to the contrary that Dinkins's experience with his own wood chipper would be prejudicial because he purchased a completely different model of chipper and so his experience was not similar enough to that of ROW.  See Health v. Suzuki Motor Corp., 126 F.3d 1391, 1396 (11th Cir. 1997) (explaining that, when attempting to show that someone knew

6

about a defect, parties cannot introduce which is "not substantially similar to the accident or incident at issue" because it is "apt to confuse or mislead the jury.") And even if Dinkins experienced the same type of problem with his different model of wood chipper, the district court deemed that testimony unnecessarily cumulative. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence."). The testimony also had the potential to "confus[e] the issues" by making it seem that the jury had to decide whether Terex had also breached the warranty that applied to Dinkins's chipper. Id.

Second, ROW does not explain how the district court's ruling subjected it to "substantial prejudice." Peat, Inc., 378 F.3d at 1162. ROW had many opportunities to introduce evidence that undermined Terex's "theme[] . . . that it responded to every claim for repair and made the repair." A number of ROW employees testified about their frustrations with Terex's chippers and what, in their view, was an insufficient response from Terex. ROW offers no reason why the omission of testimony about similar experiences with a dissimilar product substantially prejudiced its ability to impeach Terex's "theme" presented during its opening statement.

ROW next says that the jury verdict in favor of Terex was a "miscarriage of justice" because "[t]he evidence presented at trial overwhelmingly demonstrated

7

that ROW experienced problems with its Terex chippers" and Terex did not timely and effectively resolve those problems.  ROW argues it is entitled to a new trial as a result.

New trials "should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence."  Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (quotation marks omitted).  When there is conflicting testimony at trial and the jury must make credibility determinations, we will uphold the verdict "as long as there is some support for the jury's decision."  Rosenfield v. Wellington Leisure Prods., Inc., 827 F.2d 1493, 1498 (11th Cir. 1987) (per curiam).

As ROW acknowledges, there was no dispute that the chippers had problems.  So the only conflicting testimony was about whether Terex appropriately responded when ROW informed Terex of these problems.  On that point, the jury was presented with evidence sufficient to support its verdict.  See id. A number of Terex employees testified that they responded to each of ROW's reported problems with both chippers and, at times, even went above and beyond by providing repairs that were not technically covered by the warranty.  And even ROW employees testified that Terex made repairs to the chippers.  This record

8

does not reveal a jury verdict that was against the great weight of the evidence. See Lipphardt, 267 F.3d at 1186.

ROW next takes issue with the district court's order granting Terex's motion for judgment as a matter of law on ROW's claim that the consequential and incidental damages liability provision in the express warranty was unconscionable. We review de novo a grant of a Rule 50 motion, applying the same standards employed by the district court. Abel v. Dubberly, 210 F.3d 1334, 1337 (11th Cir. 2000) (per curiam).  When deciding whether a Rule 50 motion was properly granted, we must determine "whether such sufficient conflicts exist[] in the evidence to necessitate submitting the matter to the jury or whether the evidence is so weighted in favor of one side that that party is entitled to succeed in his or her position as a matter of law." Id.

Under Georgia law, there are two forms of unconscionability: procedural and substantive.  See NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 771 (Ga. 1996). ROW argues that the limited warranty suffered from both defects.  ROW's argument rests on its claim that the terms of Terex's warranty "were so one-sided in favor of Terex" as to render them both procedurally and substantively unconscionable.  But other than laying out the standards for both forms of unconscionability, ROW does not explain why the warranty at issue here was procedurally or substantively unconscionable.

9

Procedural unconscionability turns on the process of making the contract. Id. In determining whether a provision in a contract is procedurally unconscionable, courts look to "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." Id. at 771–72. Here, both parties were businesses. ROW, acting through its owner Mr. James, had sufficient "education, intelligence, business acumen and experience" to negotiate on ROW's behalf. See id. Indeed, those negotiations secured an extension of the warranty and a 20% discount on non-warrantied parts. And the incidental and consequential damages provision was "conspicuous[]" in that it was written in bolded type, in all upper case letters. Id. Beyond that, ROW does not point to any facts in the record that would support a finding that the warranty was procedurally unconscionable, nor does it explain what evidence it was precluded from introducing that would support such a finding.

As for substantive unconscionability, courts look to "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." Id. at 772. Exclusion of consequential damages is expressly permitted by the Georgia code. O.C.G.A. § 11-2-719(3). And ROW offers no argument or citations to the

record to support its contention that the limitation of incidental and consequential damages in this case is unconscionable. We therefore affirm the district court's grant of Terex's Rule 50 motion on this issue.

Finally, ROW argues that it is entitled to a new trial because the district court failed to charge the jury on the issue of consequential and incidental damages. Ordinarily, we review jury instructions for an abuse of discretion. Steger v. Gen. Elec. Co., 318 F.3d 1066, 1081 (11th Cir. 2003). But here, because ROW failed to object to the jury instructions before the district court, ROW has "waive[d] its right to raise the issue on appeal." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1329 (11th Cir. 1999). And although there is an exception to this rule for jury instructions that would constitute a "miscarriage of justice," otherwise known as "plain error review," ROW cannot benefit from that exception. Id. (quotation marks omitted). That is because Terex was entitled to judgment as a matter of law on ROW's consequential damages claim, and so the district court properly omitted a jury charge on consequential damages. Indeed, it would have been error for the district court to charge the jury on consequential damages for the same reason.

**AFFIRMED.**

11